UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOWAN HAGANS,<br><br>    Plaintiff-Petitioner,<br>*Individually and on behalf of all other similarly situated*<br><br>    v.<br><br>UNITED STATES PAROLE COMMISSION, et al.<br><br>    Defendants-Respondents. | Case No. 25-cv-1671 |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This case challenges the United States Parole Commission's ("Parole Commission" or "Commission") practice of automatically jailing everyone charged with violating their supervised release conditions during the months it takes to adjudicate those charges, regardless of the nature of the charges or the circumstances of the individual case. Plaintiffs seek an order certifying the following class pursuant to Federal Rule of Civil Procedure 23(b)(2): All people on supervised release for D.C. Code offenses who are or will be detained by the United States Parole Commission pending a revocation hearing.

The proposed class readily satisfies the requirements of numerosity, commonality, typicality, and adequacy in Rule 23(a). The proposed class is sufficiently numerous such that joinder of class members is impracticable. Hundreds of people comprise the proposed class. Joinder is impractical in light of the nature of the proposed class, which includes people who are and will be incarcerated in the D.C. Jail, and who lack the resources to file a civil suit. The class raises common legal questions that will generate common answers, including whether the Parole

Commission is legally authorized to incarcerate people before revoking their supervision and whether the Commission's automatic detention policy is constitutional and lawful under applicable statutes and regulations. Plaintiff's claims for declaratory and injunctive relief are typical of the proposed class. And Plaintiff and the proposed class will be adequately represented by experienced attorneys from the Public Defender Service for the District of Columbia, who have expertise in both class action litigation and in the policies and procedures of the United States Parole Commission.

The proposed class likewise satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Parole Commission has a uniform practice of detaining individuals on supervised release pending a revocation hearing—whether for allegations of technical violations of supervised release like missing an appointment, a non-violent misdemeanor, or a more serious offense.[1] Indeed, the Commission has no mechanism for releasing individuals pending revocation and has thus adopted a de facto automatic detention policy.

In sum, this case is a textbook Rule 23(b)(2) class action. All proposed class members are subject to the same uniform rule and seek the same relief. Certifying the class will "generate common answers apt to drive the resolution of this litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted). Accordingly, this Court should grant

---

[1] Revocations of supervised release "can be due to 'technical violations' (which generally do not involve a criminal offense) such as missing meetings with [a] Community Supervision Officer, not submitting a drug test on time, testing positive for marijuana, and for new arrests, even if those arrests do not end in charges or conviction." Emilia Calma and Yesim Sayin, *D.C. Policy Center*, Processing through D.C.'s criminal justice system: Agencies, roles, and jurisdiction (March 2, 2023).

class certification under Rule 23(b)(2), appoint named Plaintiff Antowan Hagans as the Class Representative, and appoint undersigned counsel as Class Counsel, Fed. R. Civ. P. 23(a), (g).

## BACKGROUND

Supervised release for D.C. Code offenses is administered by the United States Parole Commission. The Commission issues warrants when someone is alleged to have violated their conditions of supervised release—whether a minor, technical violation of supervised release like failing to call a supervision officer on time, a non-violent misdemeanor, or a more serious offense. 28 C.F.R. § 2.211(a). No matter what the allegations are prompting revocation proceedings, any individual arrested pursuant to a Commission-issued warrant will remain incarcerated pending a revocation hearing. Ex. A, Epps Decl. at ¶¶ 5–6. In fact, the Deputy Chief of the Public Defender Service's Parole Division, which represents nearly every person on supervise release for D.C. Code offenses in revocation proceedings, has not seen a single person released pending their revocation hearing in the past five years. *Id.* at ¶ 5. And these proceedings take months, during which time incarcerated people lose their jobs, their homes, and are less able to effectively contest their charges.

By opting for this automatic detention policy, the Commission does not make any individualized determination about whether incarceration is appropriate during this period. *See id*. By contrast, both D.C. Superior Court (which administers D.C. probation) and federal courts (which administer federal probation and federal supervised release) do make these individualized determinations and often decide that incarceration pending revocation is not warranted. Indeed, that is precisely what happened to the named Plaintiff in this case with regard to his federal probation matter. *See United States v. Antowan Hagans*, 21-cr-00187 (D.D.C.) (ABJ) (declining to detain Mr. Hagans pending probation revocation proceedings).

Plaintiff Antowan Hagans is a 30-year-old Black man on supervised release in Washington, D.C. who is currently being incarcerated by the United States Parole Commission pending a revocation determination. In March of 2025, Mr. Hagans was unlawfully arrested by plainclothes officers who chased him up the steps of his apartment building after approaching him in two unmarked vehicles. *United States v. Antowan Hagans*, 25-cr-00114 (D.D.C.) (AHA). As he ran up the stairs, an officer grabbed him as he collided with his mother. The three of them tumbled down the stairs together and a gun emerged from the melee on the steps. Mr. Hagans' mother immediately exclaimed the gun was hers. Indeed, the gun was registered to her, and she has a permit to carry a firearm. Nevertheless, the officers arrested Mr. Hagans for unauthorized possession of a firearm.

Subsequent to Mr. Hagans' arrest, three federal judges (the Magistrate Judge and District Court Judge in his pending criminal matter and the District Court Judge on a probation matter) declined to incarcerate Mr. Hagans pending the disposition of the charge. The United States Parole Commission, however, has kept Mr. Hagans incarcerated pursuant to its automatic detention policy. Mr. Hagans will remain incarcerated until the Commission decides whether or not to revoke his supervised release, a period that can last several months.

**ARGUMENT**

A plaintiff whose suit meets the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To meet these requirements, the "suit must satisfy the criteria set forth in [Rule 23(a)] (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."

*Id.* Plaintiffs' proposed class satisfies all four of these prerequisites, as well as the requirements for certification under Rule 23(b)(2).

**I.   The Proposed Class Satisfies the Four Rule 23(a) Requirements.**

    **a.   Numerosity**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Demonstrating impracticability of joinder does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) (citation omitted), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017). "There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination requires examination of the specific facts of each case and imposes no absolute limitations." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (internal quotation marks omitted); *see also Thorpe v. District of Columbia*, 303 F.R.D. 120, 144 (D.D.C. 2014) ("There is no specified or minimum number of plaintiffs needed to maintain a class action." (citation omitted)). Nevertheless, some courts in this district have found that a class is presumptively numerous enough to satisfy Rule 23(a)(1) if it includes forty or more members. *See Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 206 (D.D.C. 2018). In any case, a "plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided." *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 335 (D.D.C. 2007).

The proposed class easily meets this requirement. The United States Parole Commission holds hundreds of revocation hearings each year. For instance, in 2022, the Commission held 288 revocation hearings for people on supervised release. *See* United States Parole Commission

5

Congressional Report (FY 2022) at 11. Anyone who is jailed waiting for their revocation hearing or will be jailed waiting for their revocation hearing is a class member. And the Commission jails everyone who is waiting for their revocation hearing pursuant to the automatic detention policy challenged here. The class thus exceeds forty members and is thus entitled to a presumption of sufficient numerosity. *See Garnett*, 301 F. Supp. 3d at 206.

Additional factors commonly considered by courts when evaluating numerosity also compel the conclusion that class treatment is appropriate. The proposed class is entirely, or nearly entirely, comprised of indigent persons who are represented by the Public Defender Service for D.C. in their revocation proceedings and who cannot afford to bring individual actions. Epps Decl. at ¶ 3. *See also Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D. Colo. 1999) (finding joinder impracticable where many class members could not afford to bring individual actions); *Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y. 1994) (finding joinder impracticable where the majority of class members came from low-income households, greatly decreasing their ability to bring individual lawsuits). Class members are also incarcerated in the D.C. Jail, and therefore lack the means to commence individual lawsuits—factors that also demonstrate the impracticability of joining individual suits. *See D.L.*, 302 F.R.D. at 11 (certifying a class of a school district's "youngest and most vulnerable pupils, many of whom are indigent and unable to obtain legal services").

Finally, joinder is impracticable here because the class will expand to include unknown future class members. The Parole Commission continues to arrest people for alleged violations of supervised release and keep them incarcerated for months before it adjudicates the charges and decides whether to revoke supervision. Because "the class seeks prospective relief for future class members, whose identities are currently unknown and who are therefore impossible to join," the

Court should find "the numerosity requirement of Rule 23(a)(1) satisfied." *D.L.*, 302 F.R.D. at 11; *see also, e.g.*, *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (quoting *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification.")). As the District Court explained in *D.L.*, "future members make joinder inherently impracticable because there is no way to know who they will be." 302 F.R.D. at 11; *see also Olson v. Brown*, 284 F.R.D. 398, 408 (N.D. Ind. 2012) (same). Given the size of the proposed class now, the characteristics of the proposed class members, and the unknown identities of future class members, joinder of the proposed class is inherently impracticable.

### b. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. at 349–50 (internal quotation marks omitted). This requirement is met if "a single aspect or feature of the claim is common to all proposed class members," *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003), and "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *Wal-Mart Stores*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (internal quotation marks omitted). Therefore, commonality is satisfied "where plaintiffs allege widespread wrongdoing by a defendant" such as "'a uniform policy or practice that affects all class members,'" *D.L.*, 302 F.R.D. at 12 (quoting *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)); *see also R.I.L-R v. Johnson*, 80

F. Supp. 3d 164, 181 (D.D.C. 2015) ("As the D.C. Circuit recently explained, commonality is satisfied where there is a uniform policy or practice that affects all class members."); *Thorpe*, 303 F.R.D. at 145–46. Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Wright, Miller & Kane, Federal Practice & Procedure § 1763 (3d ed. 2005).

Here, the Parole Commission's uniform policy and practice of jailing everyone pending revocation, regardless of the allegations or individual circumstances of the case, affects all class members. Plaintiffs' claims also raise common legal questions, including whether the Parole Commission is legally authorized to incarcerate people before revoking their supervision and whether the Commission's automatic detention policy is constitutional and lawful under applicable statutes and regulations. Answering this question will "drive the resolution of the litigation," *Wal-Mart Stores*, 564 U.S. at 350 (citation omitted): If the Commission succeeds in demonstrating that its automatic detention policy is lawful, then the Commission will win this case; if Plaintiff succeeds in arguing that the Commission's automatic detention policy is unconstitutional or otherwise unlawful, then Plaintiff will win this case.

Answering this common question is sufficient to satisfy Rule 23(a)(2)'s permissive standard. "[F]actual variations among the class members," such as the specific allegations in each case, are not a barrier to meeting this requirement so long as a single aspect or feature of the claim is common to all proposed class members. *See Bynum*, 214 F.R.D. at 33. "Even a single common question will do" to support a commonality finding. *Wal-Mart Stores*, 564 U.S. at 359 (brackets and internal quotation marks omitted); *see also Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 357 (D.D.C. 2007) ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.").

### c. Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. The typicality requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores*, 564 U.S. at 349. "A class representative satisfies the typicality requirement if the representative's claims are based on the same legal theory as the claims of the other class members and her injuries arise from the same course of conduct that gives rise to the other class members' claims." *Coleman v. District of Columbia*, 306 F.R.D. 68, 83 (D.D.C. 2015) (internal quotation marks omitted). Under the rule's permissive standards, "[f]actual variations between the claims of class representatives and the claims of other class members . . . do not negate typicality." *Bynum*, 214 F.R.D. at 34. "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Id.* at 35. The typicality requirement is met here, where the named Plaintiff's "claims are based on the same legal theory as the claims of the other class members." *See id.*

As with commonality, the proposed class members all share the same claim as the proposed class representative: that the Parole Commission's automatic detention policy is unlawful. Each proposed class member has suffered the same injury, based on the same government practice, and in violation of the same laws. Because the facts and legal claims concerning Plaintiff Hagans' incarceration are typical of the proposed class, the typicality requirement is easily met here.

### d. Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement ensures

9

that "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class," and "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (citation omitted). Both requirements are met here.

The named Plaintiff will fairly and adequately protect the interests of the proposed class. Plaintiff does not seek any unique or additional benefit from this litigation that may make his interests different from or adverse to those of absent class members. Instead, Plaintiff's aim is to secure relief that will ensure that all class members are afforded their constitutional and statutory rights. Nor does Plaintiff or Class Counsel seek financial gain at the cost of absent class members' rights. Indeed, this Rule 23(b)(2) class action seeks only injunctive, and not monetary, relief. Accordingly, Plaintiff lacks any antagonism with the class, and his interests align squarely with the other proposed class members in obtaining injunctive relief.

Moreover, Plaintiff's counsel will "vigorously prosecute the interests of the class" and should be designated as class counsel under Fed. R. Civ. P. 23(g). *Twelve John Does*, 117 F.3d at 575 (citation omitted). Plaintiffs' counsel is not seeking attorneys' fees and has no interests adverse to putative class members in this litigation. Plaintiff's counsel also has extensive experience with the factual and legal issues litigated in this case; likewise, the Public Defender Service has a significant and lengthy history of affirmative civil rights class litigation. *See, e.g.*, *Mathis v. United States Parole Commission*, No. 24-cv-01312 (D.D.C.) (lead counsel in certified class action against United States Parole Commission); *Lewis v. United States Parole Commission*, No. 22-cv-2182 (D.D.C.) (lead counsel in class action against United States Parole Commission); *Love v. Bureau of Prisons*, No. 24-cv-2571 (lead counsel in class action against Bureau of Prisons); *Banks v. Booth*, No. 20-cv-849 (D.D.C.) (lead counsel in class action against District of Columbia jail);

*Hinton v. District of Columbia*, No. 21-cv-01295 (JDB) (D.D.C.) (same); *K.Y. v. District of Columbia*, No. 24-cv-03056 (D.D.C.) (lead counsel in class action against the District of Columbia Department of Youth Rehabilitation Services); *Davis v. United States Parole Commission*, No. 20-cv-2897 (APM) (D.D.C.) (lead counsel in suit against United States Parole Commission).

## II.     The Proposed Class Satisfies the Requirements of Rule 23(b)(2).

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs also must meet one of the requirements of Rule 23(b) for a class action to be certified. Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37; *Disability Rights Water Council of Greater Wash. v. Washington Metro. Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006). To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D. at 37 (internal citation omitted). As the D.C. Circuit has recognized, "Rule 23(b)(2) was intended for civil rights cases." *In re D.C.*, 792 F.3d 96, 102 (D.C. Cir. 2015).

"The key to the (b)(2) class," the Supreme Court has explained, "is the indivisible nature of the injunctive or declaratory remedy warranted." *Wal-Mart Stores*, 564 U.S. at 360. Where "a single injunction or declaratory judgment would provide relief to each member of the class," the class may be certified under (b)(2). *Id.* For this reason, civil rights class actions such as this one are the paradigmatic Rule 23(b)(2) suits, as "they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915 (1979); *see*

11

*also Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979); *Elliot v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (explaining that an action to enjoin allegedly unconstitutional government conduct is "the classic type of action envisioned by the drafters of Rule 23 to be brought under subdivision (b)(2)"), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

Specifically, this case challenges the Parole Commission's uniform policy and practice of jailing everyone who has been arrested for an alleged violation of supervised release for the months it takes to adjudicate those charges and decide whether to revoke supervision, regardless of the charges or individual circumstances of the case. And the Complaint seeks injunctive relief that would enjoin the Commission for jailing individuals during this time period or, alternatively, make individualized determinations about whether incarceration is appropriate. The requested injunctive relief would "provide relief to each member of the class." *Wal-Mart Stores*, 564 U.S. at 360. Thus, "certification of a (b)(2) class in this case is appropriate because the [Commission's] conduct is 'such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *D.L.*, 302 F.R.D. at 16 (quoting *Wal-Mart Stores*, 564 U.S. at 360).

Certification of the class is also appropriate because the injunctive and declaratory relief it seeks is necessary to avoid mootness and facilitate enforcement of judgments. *See* William B. Rubinstein, 1 Newberg on Class Actions § 2:13 (5th Ed. 2013). Given the likelihood that the named Plaintiff will eventually have his revocation hearing and/or be released from custody, and that the Commission can, and will, moot individual actions, absent certification, enforcing any judgment entered by the Court will be difficult. Moreover, future class members are entitled to the same rights and just treatment as the Plaintiff. Thus, class-wide relief is appropriate to avoid mootness and to facilitate enforcement of any judgment this Court may enter.

Accordingly, all the requirements of Rule 23 are met, and the Court should therefore certify the class so that all similarly situated people may benefit from the injunctive relief sought.

## CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2); appointing Plaintiff Antowan Hagans as Class Representative; and appointing undersigned counsel from the Public Defender Service as Class Counsel.

Dated: May 26, 2025

Respectfully Submitted,

*/s/ Hanna M. Perry*
Hanna M. Perry (D.C. Bar No. 90003756)
hperry@pdsdc.org
Zoé E. Friedland (D.C. Bar No. 1781910)
zfriedland@pdsdc.org
PUBLIC DEFENDER SERVICE FOR THE
DISTRICT OF COLUMBIA
633 3rd Street NW
Washington, D.C. 20001
Tel.: (202) 579-0633

*Counsel for Plaintiffs*