# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOWAN HAGANS,<br><br>        Plaintiff-Petitioner,<br>        *Individually and on behalf of*<br>        *all other similarly situated*<br><br>        v.<br><br>UNITED STATES PAROLE<br>COMMISSION, et al.<br><br>        Defendants-Respondents. | Case No. 25-cv-1671 |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 5

I.  Defendants Detain Putative Class Members Without Statutory Authority, in
    Violation of the Non-Detention Act. ................................................................... 5

    A.  Chapter 311 of title 18, specifically 18 U.S.C. § 4213(a)(2), does not
        authorize pre-revocation detention. ........................................................... 6

    B.  18 U.S.C. § 3583(d)-(i) does not authorize pre-revocation detention. .................... 9

    C.  Defendants' policy arguments are incorrect and unpersuasive............................. 15

II.  The Putative Class is Entitled to the Requested Relief on the Remaining
    Claims. ............................................................................................................ 17

    A.  The Remaining Claims are Properly Stated........................................................ 17

    B.  Putative Class Members Are Entitled to Release from Unlawful
        Detention in Addition to Injunctive Relief. .......................................... 17

III.  This Case is Not Moot Under the Inherently Transitory Exception. ..................... 19

IV.  Plaintiffs Satisfy Rule 23's Requirements. ....................................................... 23

    A.  Mr. Hagans Is a Member of the Class Under the Inherently Transitory
        Exception. ......................................................................................... 23

    B.  The Class Satisfies Commonality. .................................................................. 24

    C.  Class Counsel are Adequate Representatives. .................................................. 26

V.  Alternatively, Mr. Hagans' Individual Claims are Capable of Repetition Yet
    Evading Review.............................................................................................. 27

CONCLUSION.............................................................................................................. 29

# TABLE OF AUTHORITIES

**CASES**

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) ........................................................................18

*AFL-CIO v. Chao*, 409 F.3d 377 (D.C. Cir. 2005) ......................................................................11

*Banks v. Booth*, No. 20-cv-849, 2022 WL 1091212 (D.D.C. Apr. 12, 2022) ..............................26

*Borum v. Brentwood Village, LLC*, 324 F.R.D. 1 (D.D.C. 2018) ..................................................26

*Carter v. United States Parole Commission*, No. 25-CV-207, 2025 WL 1734694 (D. Conn. June 23, 2025), *appeal docketed*, No. 25-1913 (2d Cir. Aug. 6, 2025) ......................................................................................................................................18

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......................................................................28

*D.L. v. District of Columbia*, 302 F.R.D. 1 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) ..................................................................................................................................24

*Davis v. United States Parole Commission*, No. 20-cv-2897, 2021 WL 5758820 (D.D.C. Dec. 3, 2021) .............................................................................................................21

*Davis v. United States Parole Commission*, No. 24-cv-1312, 2025 WL 457779 (D.D.C. Feb. 11, 2025) ............................................................................................................26

*Gayle v. Warden Monmouth County Correctional Institution*, 838 F.3d 297 (3d Cir. 2016) ........................................................................................................................................20

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ........................................23

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ........................................................................11, 21, 22

*Godinez v. Moran*, 509 U.S. 389 (1993) .....................................................................................25

*In re Grand Jury Investigation*, 315 F. Supp. 3d 602 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019) ...........................................................................................................11

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) .......................................................................................7

*Howe v. Smith*, 452 U.S. 473 (1981) ........................................................................1, 5, 6, 7

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019) .............................................19, 20, 22, 23, 26

*Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316 (4th Cir. 2022) ............................................21

*Lewis v. United States Parole Commission*, 743 F. Supp. 3d 181 (D.D.C. 2024) ...............................................................................................................18, 19, 24, 25, 27

*N.S. v. Hughes*, 335 F.R.D. 337 (D.D.C. 2020), *modified on clarification sub nom.*, *N.S. v. Dixon*, No. 20-cv-101, 2020 WL 6701076 (D.D.C. Nov. 13, 2020)..........................26

*Nielsen v. Preap*, 586 U.S. 392 (2019) ................................................................20, 21

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ....................................................................28

*Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010) ............................................................22

*Orozco v. Garland*, 60 F.4th 684 (D.C. Cir. 2023)........................................................6

*Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003) .................................20

*In re Rail Freight Fuel Surcharge Antitrust Litigation*, 292 F. Supp. 3d 14 (D.D.C. 2017), *aff'd*, 934 F.3d 619 (D.C. Cir. 2019) .............................................................25

*Ralls Corp. v. Committee on Foreign Investment in United States*, 758 F.3d 296 (D.C. Cir. 2014) .........................................................................................27, 28, 29

*Ramirez v. United States Immigration & Customs Enforcement*, 338 F. Supp. 3d 1 (D.D.C. 2018) ......................................................................................................20, 22

*Shell Oil Co. v. Kreps*, 445 F. Supp. 1128 (D.D.C. 1977), *rev'd sub nom.*, *Alaska Bulk Carriers, Inc. v. Kreps*, 595 F.2d 814 (D.C. Cir. 1979), *itself rev'd sub nom.*, *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572 (1980) ..............................11

*Squire v. Fulwood*, Civ. A. No. 13-0202, 2013 WL 6171594 (D.D.C. Nov. 26, 2013) ..................................................................................................................18

*Sutherland v. McCall*, 709 F.2d 730 (D.C. Cir. 1983)............................................18, 19

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ..............................................26

*United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980)....................19, 20

*United States v. Clark*, No. 17-CR-43, 2025 WL 1135075 (W.D.N.Y. Apr. 17, 2025) ..................................................................................................................12, 13

*United States v. Collazo-Castro*, 660 F.3d 516 (1st Cir. 2011)....................................10

*United States v. Horse*, No. 3:21-CR-00045, 2025 WL 1938731 (D. Nev. July 15, 2025) ........................................................................................................................16

*United States v. Mercado*, 774 F. Supp. 3d 446 (D. Conn. 2025) ................................14

*United States v. Sanchez-Gomez*, 584 U.S. 381 (2018)................................................28

*United States v. Taylor*, No. 11-CR-290-A, 2025 WL 1076826 (W.D.N.Y. Apr. 10, 2025) ..................................................................................................................13, 16

iii

*United States v. Thompson*, No. CR 19-20, 2025 WL 1114740 (D. Del. Apr. 15, 2025) ................................................................................................................13

*United States v. Wade*, No. 1:09-CR-260, 2025 WL 786383 (W.D.N.Y. Mar. 12, 2025) ................................................................................................................12

*Williams v. Taylor*, 529 U.S. 420 (2000) ...........................................................................7

*Williams v. Walsh*, 648 F. Supp. 3d 70 (D.D.C. 2022) ....................................................28

*Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685 (2022) .......................................................7

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) ...........................20

STATUTES

18 U.S.C. § 3041 .................................................................................................................13

18 U.S.C. § 3142 .................................................................................................................15

18 U.S.C. § 3143 .................................................................................................................13

18 U.S.C. § 3143(a)(1) ..................................................................................................13, 14

18 U.S.C. § 3583(e)(3) ............................................................................10, 11, 12, 16

18 U.S.C. § 3583(i) .........................................................................................................9, 10

18 U.S.C. § 3606 .................................................................................................................10

18 U.S.C. § 4001(a) ...................................................................................................6, 9, 16

18 U.S.C. § 4213(a)(2) .........................................................................................................9

18 U.S.C. § 4214(a)(2) .........................................................................................................8

28 U.S.C. § 2072(b) ...........................................................................................................12

D.C. Code § 23–1322 .........................................................................................................15

D.C. Code § 23–1322(a) ......................................................................................................9

D.C. Code § 24-133(c)(2) ..........................................................................................5, 6, 7, 8

D.C. Code § 24-133(c)(2)(A) .......................................................................8, 12, 14, 16

D.C. Code § 24-133(c)(2)(B) ...............................................................................................8

**OTHER AUTHORITIES**

28 C.F.R. § 2.214(b) ................................................................................................................27

28 C.F.R. § 2.215(f) .................................................................................................................21

Fed. R. Crim. P. 4 ....................................................................................................................11

Fed. R. Crim. P. 9 ....................................................................................................................11

United States Parole Commission Rules and Procedures Manual,
    https://www.justice.gov/sites/default/files/uspc/legacy/2010/08/27/uspc-manu
    al111507.pdf .....................................................................................................................12

## INTRODUCTION

This case challenges the United States Parole Commission's ("Commission") unlawful policy of automatically detaining individuals for months pending a revocation hearing. The plain text of the D.C. Code is clear: The Commission does not have Congressional authority to detain individuals pending revocation at all, let alone automatically. Searching for some semblance of authority, Defendants point to a statute cross-referenced as the source of the Commission's "procedures" and another statute Federal Defendants previously "agreed" "does not reference authority to detain" pending revocation. Tr. 22:6–13.[1] Neither of these provisions provides the necessary "congressional grant of authority to detain" under the Non-Detention Act. *Howe v. Smith*, 452 U.S. 473, 479 n.3 (1981).

This is a textbook Rule 23(b)(2) class action on behalf of everyone who is or will be detained by the Commission pending a revocation hearing, and Defendants' limited arguments against class certification do not hold water. Mr. Hagans can represent the class even though he is no longer in custody under the well-established inherently transitory exception to mootness, which allows a motion for class certification to relate back to the filing of the complaint. The injury here—unlawful detention—is common to the class despite Defendants' unfounded contention that some individuals "waive" their right to argue for release. To the extent Defendants suggest there can be a knowing and intelligent waiver of the right to be free from unauthorized automatic detention, the Court should reject that premise. Finally, counsel from the Public Defender Service for the District of Columbia and Jenner & Block LLP will adequately represent the interests of the class.

---

[1] All citations to "Tr. _" refer to the transcript of the July 9, 2025, hearing on Plaintiffs' Motion for Preliminary Injunction.

For these reasons, the Court should certify the class and deny Defendants' Motions to Dismiss.

## BACKGROUND[2]

Named Plaintiff Antowan Hagans brought this putative class action on behalf of himself and a class of similarly situated individuals on supervised release for D.C. Code offenses. Specifically, Mr. Hagans seeks to represent a class of all people on supervised release for D.C. Code offenses who are or will be detained by the Commission pending a revocation hearing (collectively, "Plaintiffs"). *See* ECF No. 2. Plaintiffs are alleged to have violated conditions of their supervised release, but it is undisputed (because revocation hearings have not yet taken place) that such allegations have not been proven. It is also undisputed that each class member falls into at least one of two categories: (a) they have been accused of only a "technical" violation—that is, one that does not constitute criminal misconduct; and/or (b) they have received an individualized determination by a judge that pre-trial detention is not warranted with respect to any criminal charges underlying their revocation proceedings.

Plaintiffs allege that they are detained without statutory authorization, in violation of the Non-Detention Act, *see* Compl. ¶¶ 94–97, and seek immediate release on that basis. They further allege that, even if the court finds statutory authority for pre-revocation detention exists, their detention remains unlawful unless and until the Commission renders individualized determinations about whether pre-revocation detention is warranted, based on the factors enumerated in 18 U.S.C. § 4214. *See* Compl. ¶¶ 105–110. Finally, Plaintiffs allege that the Commission's policy of

---

[2] Plaintiffs respectfully refer the Court to both their Memorandum and Reply in Support of their Motion for Preliminary Injunction for a more fulsome discussion of the legal and factual background. *See* ECF No. 12-1 at 3–15, ECF No. 16 at 1–6.

automatically detaining supervised releasees pending revocation hearings is unconstitutional, as it deprives Plaintiffs of their procedural and substantive due process rights to an individualized determination about flight risk and dangerousness, *see* Compl. ¶¶ 98–104, as well as their rights under equal protection principles to be free from arbitrary differential treatment, *see* Compl. ¶¶ 111–116. Plaintiffs seek declaratory and injunctive relief to remedy these ongoing constitutional violations.

On June 16, 2025, Plaintiffs moved for a preliminary injunction on the basis of each of their claims. ECF Nos. 12, 12-1. The Warden of the District of Columbia Department of Corrections did not oppose Plaintiffs' request for immediate release; he committed to "abide by the order of the Court as to whether Plaintiff or members of the putative class should be detained or released." ECF No. 15. Federal Defendants opposed, arguing that pre-revocation detention is statutorily authorized, that there is no automatic detention policy, and that any automatic detention policy would comport with the Commission's statutory and constitutional obligations. ECF No. 14. Tellingly, Federal Defendants initially took the position that 18 U.S.C. § 4214 does not require the Commission to make *any* determinations about whether pre-revocation detention is warranted. *See* ECF No. 14 at 32–33. Then, in a sur-reply (styled as a "Notice") filed the night before the preliminary injunction hearing, Federal Defendants conceded that Section 4214 applies and requires assessment of the statutorily enumerated factors to justify pre-revocation detention, but took the remarkable position that an automatic detention policy "would itself constitute a permissible exercise of the Commission's discretion under this statute." ECF No. 17.

On July 9, 2025, this Court held a hearing on Plaintiffs' Motion for Preliminary Injunction. Federal Defendants acknowledged on the record that detaining someone is an exercise of "authority," Tr. 22:2–5, and that the statutory provisions setting forth the Commission's

3

"authority" over putative class members—18 U.S.C. § 3583(d)-(i)—do not encompass pre-revocation detention, Tr. 21:8–11, 22:6–13. Yet they continued to advance the position that the Commission may detain everyone for whom it has found probable cause for a supervised release violation, even without making individualized determinations about flight risk and dangerousness. Tr. 60:7–13, 61:20–22. In other words, pursuant to an automatic detention policy. At the close of the hearing, the Court took the motion under advisement and directed expedited discovery regarding the existence of the automatic detention policy, followed by an evidentiary hearing, *see* Min. Entry (July 9, 2025), which has since been scheduled for September 3 and 4, 2025, *see* Min. Entry (July 30, 2025). Discovery is ongoing.

Meanwhile, on July 14, 2025, the Commission held a final revocation hearing for Mr. Hagans. *See* ECF No. 26-1 at 1. Although the Commission found that Mr. Hagans had violated a special condition of supervised release related to his participation in drug and alcohol treatment, the Commission "deemed" this violation "insufficient for revocation." *Id.* The Commission made no finding on (meaning there was insufficient evidence to support) the alleged law violation, *see id.* at 2, which was premised on the same alleged conduct for which three federal judges had already concluded that Mr. Hagans should be released from detention pending adjudication, *see* Compl. ¶¶ 68–77. On July 16, 2025, after detaining Mr. Hagans at the notoriously dangerous and unsanitary D.C. Jail since April without statutory authorization, or even any justification based on dangerousness or flight risk, Defendants released Mr. Hagans and reinstated him to supervision. *See id.* By virtue of his reinstatement to supervision, Mr. Hagans remains subject to certain conditions, *see id.* ¶¶ 9–10, 26 (citing S. Rep. No. 98-225, at 124 (1983)), as well as the threat of reincarceration by Defendants should he again be accused of violating those conditions.

4

All Defendants have now moved to dismiss the complaint, ECF Nos. 25, 27, and Federal

Defendants have also opposed Plaintiffs' Motion for Class Certification, ECF No. 26. [3]

## ARGUMENT

### I.     Defendants Detain Putative Class Members Without Statutory Authority, in Violation of the Non-Detention Act.

The Non-Detention Act forbids "detention *of any kind* by the United States, absent a

congressional grant of authority to detain." *Howe v. Smith*, 452 U.S. 473, 479 n.3 (1981).  D.C.

Code § 24-133(c)(2), through its plain text, gives the Commission the "same authority as is vested

in the United States district courts by paragraphs (d) through (i) of § 3583," "except that" the

"procedures followed by the Commission in exercising such authority" are those set forth in

chapter 311 of title 18.  Neither section 3583(d)-(i) nor the "procedures" in chapter 311 of title 18

provide the Commission the necessary grant of authority to detain a supervised releasee pending

revocation proceedings.  This Court should be wary of crediting the executive branch's policy

preferences as a basis for finding congressionally granted authority where it does not exist.

In the absence of statutory authority for pre-revocation detention, Defendants have

bounced around the federal code, looking for somewhere to land.  In the preliminary injunction

briefing and at the first preliminary injunction hearing, Federal Defendants argued that 18 U.S.C.

§§ 4213(a)(2) and 3606 granted them authority, while conceding that 18 U.S.C. § 3583(d)-(i) did

not.  *See* PI Opp. at 14–19;[4] Tr. 21:8–11, 22:6–13.  Now, in their Motion to Dismiss, Defendants

have abandoned the argument that 18 U.S.C. § 3606 grants them any authority.  They have also

---

[3] Hereinafter, Federal Defendants' Memorandum in Support of Motion to Dismiss and Opposition to Plaintiffs' Motion for Class Certification, ECF No. 26, is cited as "MTD at _."

[4] All citations to "PI Opp. at _" refer to Federal Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 14.

abandoned their prior concession regarding 18 U.S.C. § 3583(d)-(i) and now argue that it *does* provide pre-revocation detention authority.  Even as they grasp for straws, Defendants' arguments fail.

### A. Chapter 311 of title 18, specifically 18 U.S.C. § 4213(a)(2), does not authorize pre-revocation detention.

The parties agree that the Non-Detention Act requires a "congressional grant of *authority* to detain" individuals prior to revoking their supervised release.  *Howe*, 452 U.S. at 479 n.3 (emphasis added); *see* 18 U.S.C. § 4001(a).  Here, Congress made clear that the Commission's "authority" over individuals on supervised release for D.C. Code offenses comes from 18 U.S.C. § 3583(d)-(i).  *See* D.C. Code § 24-133(c)(2).  As explained *infra*, and as Federal Defendants previously conceded, Tr. 21:8–11, 22:6–13, 18 U.S.C. § 3583(d)-(i) does not confer pre-revocation detention authority.   That should be the end of the inquiry.

Defendants' main argument—the only one they have maintained throughout this litigation—is that 18 U.S.C. § 4213(a)(2) is the source of the Commission's pre-revocation detention authority.  That statute is not part of 18 U.S.C. § 3583(d)-(i).  It is instead contained within "chapter 311 [repealed] of title 18, United States Code," which Congress cross-referenced solely for the "procedures" the Commission must follow in exercising its authority.  D.C. Code § 24-133(c)(2).  "[P]rocedures" are not "authority."  And as the D.C. Circuit has made clear, a cross reference for a specific purpose is limited to that purpose.  *See Orozco v. Garland*, 60 F.4th 684, 688 (D.C. Cir. 2023) (taking "Congress at its word that, when it incorporated the 'remedies, procedures, and rights' set forth in another part of the Rehabilitation Act, it did that and no more").

Although Plaintiffs do not contend that a statute *must* include the specific word "authority," Congress used it here.[5]  And when Congress has explicitly cabined an agency's "authority" to a

---

[5] Defendants argue that Congress need not use a "clear statement" or "magic words" to provide

specific statute, ignoring that limitation would defy both Congress's plain text and its intent.  *See* D.C. Code § 24-133(c)(2).  Furthermore, "[w]hen the words of the [Supreme] Court are used in a later statute governing the same subject matter, it is respectful of Congress and of the Court's own processes to give the words the same meaning[.]" *Williams v. Taylor*, 529 U.S. 420, 434 (2000).  In 1981, the Supreme Court held that the Non-Detention Act requires Congressional "authority" to detain.  *Howe*, 452 U.S. at 479 n.3.  In 1997, Congress enacted a law limiting the Commission's "authority" to 18 U.S.C. § 3583(d)-(i).  *See* D.C. Code § 24-133(c)(2).  That Congress clearly delineated the source of the Commission's "authority" against Supreme Court precedent using the same term "clinches the case."  *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 700 (2022).

In an attempt to muddy the textual distinction between "authority" and "procedures" that Congress wrote into the D.C. Code, Defendants look to the so-called "false dichotomy" between "*substance*" and "procedure."  MTD at 14–17.  That is a red herring.  This case is not about whether procedural rules can sometimes affect substantive rights.  *Contra* MTD at 14–15.  This case is about the statutory terms "authority" and "procedures" in D.C. Code § 24-133(c)(2)'s plain text.  When Congress has explicitly circumscribed an agency's "authority," that agency cannot derive additional "authority"—like the "authority" required for detention—from a statute cross-referenced for "procedur[al]" purposes.

---

detention authority.  MTD at 11–12.  Plaintiffs have never argued that the Non-Detention Act requires "magic words."  Magic words are not the same thing as a clear statement, and the Supreme Court has in fact assumed that any Congressional grant of detention authority must be clear.  *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 517, 519 (2004) (holding that the Authorization for Use of Military Force (AUMF) "*clearly and unmistakably* authorized detention in the narrow circumstances considered [t]here" (emphasis added)); *see also id.* at 543 (explaining that the Non-Detention Act "was meant to require clear congressional authorization before any citizen can be placed in a cell") (Souter, J. concurring in part).  In any case, Defendants' focus on clear statement rules is irrelevant in this case because Congress *was* clear.

Attempting to square this circle, Defendants claim that jailing someone without having revoked their supervised release is merely "part of the 'procedures' of deciding whether to revoke supervision." MTD at 17. Here too, the plain text makes clear the absurdity of this argument: The "procedures" in chapter 311 are just that—procedures. They include, for example, an "opportunity for the parolee to appear and testify," "present witnesses," and "be represented by an attorney." 18 U.S.C. § 4214(a)(2). Those are procedures—months of imprisonment is not. *See* Tr. 22:2-5 (The Court: "[D]etaining someone is an exercise of authority; right?" Counsel for Federal Defendants: "Yes.").

Finally, Defendants implausibly seize on Congress's use of the phrase "except that," which they claim means the Commission's authority is actually *enlarged* by the provisions in chapter 311. MTD at 17–18 (citing D.C. Code § 24-133(c)(2) (the Commission's "authority" comes from 18 U.S.C. § 3583(d)-(i), "except that" the "procedures in exercising such authority shall be those set forth in chapter 311 [repealed] of title 18, United States Code")). This argument does not make sense, for at least two reasons: First, the text—"procedures in exercising *such authority*"— presumes an authority that has already been defined. D.C. Code § 24-133(c)(2) (emphasis added). Second, Congress's use of the word "except" is followed by specific limitations or caveats to the Commission's authority. For instance, the Commission cannot extend a term of supervision, only a court can. D.C. Code § 24-133(c)(2)(B). And rather than follow the procedural rules referenced in 18 U.S.C. § 3583(d)-(i)—specifically, the Federal Rules of Criminal Procedure—the Commission must instead follow the procedures in chapter 311. D.C. Code § 24-133(c)(2)(A).

8

These are exceptions to the wholesale adoption of 18 U.S.C. § 3583(d)-(i), not additional grants of authority.[6]

In sum, the Non-Detention Act requires Congressional "authority" for detention. *See* 18 U.S.C. § 4001(a). Here, where Congress has used the word "authority" to define the Commission's power, that "authority" cannot be augmented with provisions cross-referenced explicitly for procedural purposes, and 18 U.S.C. § 4213(a)(2) thus plainly does not confer on the Commission the power to detain individuals pending a revocation hearing.

**B.  18 U.S.C. § 3583(d)-(i) does not authorize pre-revocation detention.**

At the Preliminary Injunction hearing, Defendants agreed that 18 U.S.C. § 3583 does not provide the Commission with authority to detain individuals pending revocation hearings. *See* Tr. 21:8–11 (The Court: "Where in 3583 – just point me to the language that says that the Parole Commission can detain people pending a revocation hearing." Counsel for Federal Defendants: "3583 doesn't say that."); Tr. 22:6–13 (The Court: "3583 does not reference authority to detain someone pending [revocation]. We're agreed; right?" Counsel for Federal Defendants: "Yes."). They were correct. Now, Defendants attempt to undo their concession and argue that authority can be found in two provisions of Section 3583: (1) subsection 3583(i), which clarifies that the

---

[6] Defendants also argue that a D.C. Code provision about pre-trial detention in D.C. Superior Court somehow "presupposes" that the Commission is congressionally authorized to detain individuals on supervised release pending revocation. MTD at 18–19. According to Defendants, because D.C. Code § 23–1322(a) references a "probation or parole official" taking someone on supervised release into custody within five days of their being charged with a criminal offense *and* deemed by a court a danger or flight risk, the Commission necessarily has the power to detain *anyone* on supervised release, including those not contemplated by this D.C. Code provision (those only accused of technical violations, for example), and to do so for months pending revocation proceedings. This contention assumes far too much. The most the Court could infer from D.C. Code § 23–1322(a) is that a "probation or parole official" may be independently authorized to take someone into custody for a probable cause hearing after a court has already deemed them a danger or a flight risk.

Commission's authority to revoke a term of supervised release "extends beyond the expiration of the term of supervised release" for the "adjudication of matters arising before its expiration" if "a warrant or summons has been issued on the basis of an allegation of such a violation"; and (2) subsection 3583(e)(3), which gives the Commission the authority to "revoke a term of supervised release" if the Commission "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." As the plain text of both of these subsections makes clear, they include no discussion, let alone grant, of authority that would permit the Commission to detain individuals for months while they await their revocation hearings.

As to § 3583(i): *First*, this section permits the Commission to revoke a term of supervised release after the expiration of that term based on allegations of violations prior to the expiration "if, before its expiration, a warrant or summons has been issued." 18 U.S.C. § 3583(i). Section 3583(i) thus only "extends the jurisdiction of a court to hold revocation hearings after the term of supervised release has expired." *United States v. Collazo-Castro*, 660 F.3d 516, 519 (1st Cir. 2011) (quoting *United States v. Garcia-Avalino*, 444 F.3d 444, 446 n.3 (5th Cir. 2006)). An entirely different statute that does not apply to the Commission—18 U.S.C. § 3606—"actually governs the issuance of warrants for the arrest of probationers or supervised releasees."[7] *Id*. Courts thus agree with Plaintiffs that 18 U.S.C. § 3583(i) "authorizes a warrant's issuance only in narrow circumstances that do not apply here." MTD at 22.

---

[7] As Plaintiff previously explained, Section 3606 applies to courts and probation officers who do not supervise D.C. Code supervised releasees. Pl. Opp. at 12. Even if Section 3606 applied to the Commission, it authorizes only arrest, not pre-revocation detention. *Id*. Defendants seemingly agree, having abandoned this argument.

*Second*, the authority to issue a warrant or summons does not encompass the authority to detain someone for months on end.[8]  It is well established that an initial warrant can justify only "a brief period of detention to take the administrative steps incident to arrest."  *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).  The fact that Congress included the term "warrant" next to the term "summons" confirms this fact.  Both a warrant and a summons are used to bring individuals to a proceeding—here, a probable cause hearing.  *See* Fed. R. Crim. P. 4, 9 (explaining that a summons "must be in the same form as a warrant").  At most, the Commission's power to issue a warrant authorizes detention only for the "brief period" leading up to a probable cause hearing, *Gerstein*, 420 U.S. at 114, not for the months that follow pending revocation.

As to § 3583(e):  *First*, Section 3583(e)(3) directs *courts*—not the Commission—to follow the Federal Rules of Criminal Procedure's instructions for how to reach their revocation decisions. *See* 18 U.S.C. § 3583(e)(3) ("The *court* may . . . revoke a term of supervised release . . . if the *court*, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" (emphasis added)).  Defendants' argument that Section 3583(e)(3) makes Federal Rule of Criminal Procedure 32.1(a)(6) applicable to the Commission raises the question: Why did Congress, in the D.C. Code, explicitly direct the Commission to use the procedures of chapter 311 of title 18?  The answer: The Federal Rules of Criminal Procedure

---

[8] None of the cases cited by Defendants are related to the authority to arrest or detain.  *AFL-CIO v. Chao*, 409 F.3d 377, 381 (D.C. Cir. 2005) (relating to rulemaking authority); *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 654 (D.D.C. 2018) (relating to appointment authority), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019); *Shell Oil Co. v. Kreps*, 445 F. Supp. 1128, 1134 (D.D.C. 1977) (relating to general authority to accept repayments), *rev'd sub nom.*, *Alaska Bulk Carriers, Inc. v. Kreps*, 595 F.2d 814 (D.C. Cir. 1979), *itself rev'd sub nom.*, *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572 (1980).  This is because there is no "general authority" to detain—as acknowledged by Defendants, the Non-Detention Act requires a congressional grant of authority to detain individuals prior to revoking their supervised release.

govern courts, and Congress has directed the Commission to use different procedures when administering supervised release. This is clear from the text of D.C. Code § 24-133(c)(2)(A), which directs the Commission to Section 3583 "except" for its "procedures." *See supra* § I.A. Indeed, nowhere in the U.S. Parole Commission Rules and Procedures Manual—which contains the Commission's promulgated rules and supplementary notes, procedures, and clarifications— does the Commission discuss Federal Rule of Criminal Procedure 32.1.[9]  That is because the Commission understands that the rule does not apply. *See also* Tr. 32:6–8 (Counsel for Federal Defendants explaining that "the federal rules . . . [are] not, in any event, necessarily relevant to the Commission's authority").[10]

*Second*, a Federal Rule cannot confer detention authority. The Rules Enabling Act, which gives the Supreme Court "the power to prescribe general rules of practice and procedure and rules of evidence," specifically states that "[s]uch rules shall not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  A case Defendants cite makes this point explicitly: "Procedural rules do not provide substantive rights, and Rule 32.1 therefore cannot by itself authorize pre-hearing detention." *United States v. Clark*, No. 17-CR-43, 2025 WL 1135075, at *3 (W.D.N.Y. Apr. 17, 2025) (internal quotation omitted). *See also United States v. Wade*, No. 1:09-CR-260, 2025 WL 786383, at *2 (W.D.N.Y. Mar. 12, 2025) ("Therefore, Rule 32.1(a)(6) cannot by itself authorize pre-hearing detention – instead, that authority must be found in the statute to which it refers, namely [the Bail Reform Act].").

---

[9] *See* https://www.justice.gov/sites/default/files/uspc/legacy/2010/08/27/uspc-manual111507.pdf.

[10] Defendants conveniently exclude from their quotation of 18 U.S.C. § 3583(e)(3) the clause that describes *when* the Federal Rules of Criminal Procedure should be referenced: "if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *Id.*  By the plain text of § 3583(e)(3), the Rule is cross-referenced only for procedures regarding revocation decisions, not pre-revocation detention.

Defendants' citations to three unreported district court opinions confirm this point, as none held that the Federal Rules of Criminal Procedure alone provide courts with the authority to detain individuals pending revocation. Rather, the courts in each of these cases determined that *courts'* authority to detain also comes from the Bail Reform Act, 18 U.S.C. § 3143. *See United States v. Thompson*, No. CR 19-20, 2025 WL 1114740, at *3 (D. Del. Apr. 15, 2025) ("(1) Section 3143(a)(1) — an Act of Congress as that term is used in the Non-Detention Act — does provide the authority necessary to detain individuals pending a revocation hearing."); *Clark*, 2025 WL 1135075, at *3 ("So the authority to detain someone accused of a supervised release violation—if it exists—must come from somewhere else . . . . That somewhere else is section 3143(a)(1)."); *United States v. Taylor*, No. 11-CR-290-A, 2025 WL 1076826, at *5 (W.D.N.Y. Apr. 10, 2025) ("Thus, by its plain language, 18 U.S.C. § 3143(a)(1) authorizes a Court to detain an individual.").

Defendants spill much ink discussing the Bail Reform Act, but they do not argue that the Act, which applies to "courts and magistrates," applies to the Commission.[11]  Nor can it be incorporated via a Federal Rule of Criminal Procedure that itself does not apply to the Commission.

---

[11] 18 U.S.C. § 3143 applies to judicial officers, defined in 18 U.S.C. § 3041 as "any justice or judge of the United States, or . . . any United States magistrate judge, or . . . any chancellor, judge of a supreme or superior court, chief or first judge of the common pleas, mayor of a city, justice of the peace, or other magistrate."  Defendants in their Motion to Dismiss do not even identify the Bail Reform Act as one of the two alleged sources of authority for the Commission's pre-revocation detention.  But even if the Bail Reform Act applied to the Commission, its language does not allow for the pre-revocation detention of individuals on supervised release.  The Bail Reform Act authorizes the detention of individuals who have been found guilty of an offense and are awaiting sentencing.  18 U.S.C. § 3143(a)(1).  Supervised releasees pending revocation have not been found guilty of the alleged violation and therefore are not awaiting imposition or execution of a sentence.  Interpreting the Bail Reform Act to apply to any supervised releasee found guilty of an underlying offense and facing the potential for revocation, and therefore post-revocation penalties, would mean that all people on supervised release, even those who have not even been accused of a violation, "shall" be detained under the Bail Reform Act.  This would be an absurd result.

If the Bail Reform Act did somehow apply to the Commission, the Commission would have to follow the standards contained therein, including that an individual who is not a flight risk or a danger "shall" be released. 18 U.S.C. § 3143(a)(1). Tellingly, Defendants have been adamant that is not the applicable standard here. *See* ECF No. 17, Def. Notice at 2 (claiming an automatic detention policy would be within its discretion because the statutory language that governs the Commission uses the word "'may,' not 'must' or 'shall'").

Defendants' contention that *Mercado* was wrongly decided is therefore inapposite: *Mercado* concerned a *court's* authority to detain, *United States v. Mercado*, 774 F. Supp. 3d 446 (D. Conn. 2025), while the question before this Court is whether the *Parole Commission* has the authority required by the Non-Detention Act to detain supervised releasees pending their revocation proceedings. Defendants' argument that courts indeed have detention authority pursuant to Federal Rules of Criminal Procedure and the Bail Reform Act—provisions that apply to courts but not to the Parole Commission—has no bearing on an executive agency's authority. *See* Tr. 39:3–7 (counsel for Federal Defendants explaining that both parties "agree" that *Mercado* has "to do with the authority of a federal district court and [doesn't] really bear on the . . . Commission's authority.").

Today, in a desperate search for some authority, Defendants would have this Court go on a scavenger hunt through the D.C. Code, United States Code, and Federal Rules of Criminal Procedure to find some authority to detain class members. The simplest answer is often the correct one: D.C. Code § 24-133(c)(2)(A) gives the Commission the "same authority" as is vested in the United States district courts by paragraphs (d) through (i) of § 3583, and these subsections do not even discuss detaining individuals pending revocation proceedings, let alone give the Commission the authority to do so.

**C. Defendants' policy arguments are incorrect and unpersuasive.**

Unable to point to any convincing statutory authority for pre-revocation detention, Defendants fearmonger with inaccurate and irrelevant policy arguments. As an initial matter, holding that Congress did not authorize the Commission to detain individuals pending revocation does not prevent the detention of individuals deemed dangerous. That is because *courts* have the power to order pretrial detention of anyone who has been accused of violating a criminal law. *See e.g.*, 18 U.S.C. § 3142; D.C. Code § 23–1322. Class members, by definition, are *not* detained pursuant to such court orders, either because (a) they have not been accused of criminal conduct (and are in revocation proceedings for mere "technical" violations of supervised release conditions, such as missing an appointment with their supervision officer); or (b) a court, after considering the government's arguments on flight risk and dangerousness, affirmatively determined that pretrial detention was not necessary. This Court need not be "wary" of "disarm[ing]" a federal agency from arresting and detaining individuals who have been accused of technical, not criminal, violations, and/or have already been deemed non-dangerous and not flight risks by a court (or, in some cases, more than one court). MTD at 12.

Exaggerating the scope of this litigation, Defendants veer into a separate question: whether the Commission has the authority to arrest a releasee to bring them to a probable cause hearing. MTD at 12. That is not the subject of this case, and the Court need not decide if the Commission has that power. Nevertheless, Defendants are incorrect that if the Commission "lacks statutory authority to detain a releasee pending a revocation hearing, then it also lacks authority even to arrest a releasee for violating a condition of supervision in the first place." *Id.* The authority to arrest someone pursuant to a warrant and detain them pending an initial appearance is distinct from the authority to detain them for months prior to a revocation hearing. *See supra* § I.B. In any case, Defendants plainly *can* administer supervised release without an independent power to jail

15

individuals pre-revocation.  For instance, the Commission could summon individuals on supervised release to a revocation hearing in the community, as it did in the past.  If the individual did not appear at the hearing, the Commission could revoke their supervision in absentia, at which point it would have the authority to arrest and detain them.  *See* 18 U.S.C. § 3583(e)(3).

Finally, Defendants' claim that if the Commission does not have the authority to detain individuals pre-revocation, then neither do courts, MTD at 12, is wrong twice over.  First, it is not clear that the Non-Detention Act's prohibition applies to courts at all.  The Non-Detention Act prohibits imprisonment by the *United States* unless pursuant to an act of Congress.  18 U.S.C. § 4001(a); *see also United States v. Horse*, No. 3:21-CR-00045, 2025 WL 1938731, at *2 (D. Nev. July 15, 2025) (holding that "the Non-Detention Act's use of the term 'United States' refers to the Executive and thus does not restrain this Court's detention authority.").  Furthermore, courts, unlike the Commission, have the "inherent authority" via the Judiciary Act of 1789 to "sanction those who violate lawful conditions which it imposes as part of a criminal sentence."  *Taylor*, 2025 WL 1076826, at *3.  But even assuming that courts must have statutory authority to detain individuals pre-revocation, resolving whether or not they do would require analyzing statutes that apply to *courts*, not just the small subset of those statutes that also apply to the Commission.  The Commission's authority is prescribed by D.C. Code § 24-133(c)(2)(A), which incorporates two federal provisions.  Neither of those provisions provide the Commission authority to detain individuals prior to revoking their supervised release.  *See supra* § I.A–B.  Courts, on the other hand, derive authority from several additional sources.  If courts do need congressional authority to detain individuals pre-revocation, then a law that does not apply to the Commission may provide that authority.  The Court need not wade into that issue here.

In sum, Defendants' slippery slope arguments are both wrong and irrelevant. Holding that the Commission does not have independent authority to detain individuals prior to revoking their supervised release affects a small subset of people who have not been accused of violating the law or have otherwise been released pretrial by a court that has assessed their dangerousness and flight risk. And this holding would not control the Commission's arrest power or any courts' power.

## II. The Putative Class is Entitled to the Requested Relief on the Remaining Claims.

### A. The Remaining Claims are Properly Stated.

Plaintiffs have also stated procedural due process, substantive due process, equal protection, and 18 U.S.C. § 4214 claims for the reasons explained in their Memorandum in Support of and their Reply in Support of their Motion for Preliminary Injunction. *See* ECF Nos. 12-1, 16. Because Defendants make no new arguments in opposing those claims, *see* MTD at 32, Plaintiffs likewise refer the Court to their prior briefing, *see* Memorandum ISO Mot. for Prelim. Injunction at 17–39; Reply ISO Mot. for Prelim. Injunction at 14–23.

### B. Putative Class Members Are Entitled to Release from Unlawful Detention in Addition to Injunctive Relief.

Plaintiffs agree that a proper remedy for their constitutional claims is injunctive relief directing individualized hearings about whether pre-revocation detention is necessary in light of dangerousness and flight risk considerations. *See* MTD at 32; ECF No. 16 at 7–9. But Defendants are wrong that this would be the only remedy available if the Court were to find that the Commission has authority to order pre-revocation detention. A proper exercise of such authority would require an individualized determination pursuant to Section 4214, the absence of which renders Plaintiffs' detention unlawful.

Plaintiffs properly seek a writ directing their immediate release from detention or, in the alternative, a conditional writ directing their release unless and until the Commission makes the

requisite individualized determinations. *See* ECF No. 16 at 6–7; *see also Aamer v. Obama*, 742 F.3d 1023, 1035 (D.C. Cir. 2014) ("[A] [habeas] court may simply order the prisoner released unless the unlawful conditions are rectified."). A final remedial option available to the Court would be a conditional writ with a stayed mandate, such that immediate release from detention would be required if the Commission has not conducted the requisite individualized hearing for a particular class member by a date certain. *See, e.g.*, *Carter v. U.S. Parole Comm'n*, No. 25-CV-207, 2025 WL 1734694 (D. Conn. June 23, 2025) (staying issuance of habeas writ directing immediate release until date certain), *appeal docketed*, No. 25-1913 (2d Cir. Aug. 6, 2025).

The authorities relied upon by Defendants are not to the contrary. As Defendants acknowledge, *see* MTD at 33, immediate release from detention is available "where a petitioner establishes that the Commission's delay in holding [a] hearing was both unreasonable and prejudicial." *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983); *see also Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 198 (D.D.C. 2024); *Squire v. Fulwood*, Civ. A. No. 13-0202, 2013 WL 6171594, at *2 (D.D.C. Nov. 26, 2013). As an initial matter, the *Sutherland* prejudice inquiry has no application here, as Plaintiffs neither allege a mere *delay* in holding a hearing nor seek termination of their status as supervised releasees on that basis. *See Sutherland*, 709 F.2d at 732 (alleging that delay in holding parole revocation hearing requires termination of status as parolee); *Lewis*, 743 F. Supp. 3d at 198 (alleging same as to delay in holding parole termination hearing). Rather, Plaintiffs allege that their present detention is itself unlawful because it has not been justified based on the statutorily enumerated factors. And they seek release from detention unless and until their detention is justified pursuant to those factors, leaving undisturbed their status as supervised releasees.

18

Even under *Sutherland*'s logic, though, Plaintiffs are entitled to release. Defendants assert that there has been no showing of prejudice here to support a release order, but Plaintiffs' detention is itself prejudicial under these circumstances. Unlike in *Sutherland*, where the habeas petitioner "was under custody on other criminal sentences for all but the first two days of the thirty-three month delay and was ultimately given full credit for the time served from the day of arrest," 709 F.2d at 732–33, this putative class by definition encompasses only individuals who would not be in custody *but for* the pre-revocation detention they challenge: Each class member either has not been charged with criminal misconduct or has been ordered released pre-trial by the judge presiding over the underlying criminal charges.

In any event, Defendants' own authorities confirm that disputes about the proper scope of relief on a particular claim are no basis for dismissal where, as here, Plaintiffs have pleaded for "such further relief as the Court deems appropriate." Compl. at 23. *See Lewis*, 743 F. Supp. 3d at 198 (rejecting argument that dismissal was warranted by prayer for relief seeking inappropriate remedy). Accordingly, Defendants' motion to dismiss the constitutional and Section 4214 claims should be denied.

## III.    This Case is Not Moot Under the Inherently Transitory Exception.

The Court has jurisdiction over the putative class even though Mr. Hagans is no longer detained. Under the "inherently transitory" exception to mootness, a named plaintiff retains a "right" to represent a proposed class even after his personal claim has become moot and before a class has been certified. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399, 404 (1980). That exception applies squarely here. As such, the Court must proceed to the merits and "need not decide whether [Mr. Hagans' individual] claims are moot." *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019).

This Circuit has explained that the "inherently transitory" exception to mootness depends on two inquiries: "(i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311.  If the answer to both questions is yes, a motion for certification will "relate back" to the filing of the complaint and the class claims survive.  *Id.* at 1308.  Mr. Hagans and the putative class easily satisfy both prongs of this analysis.[12]

*First*, the claims "likely will, or at least might, end quickly." *J.D.*, 925 F.3d at 1311.  The first prong is satisfied if a claim will expire quickly or if it is of uncertain duration.  Both are true of putative class members' claims.  In *J.D.*, this Circuit held that a nine-month pregnancy would "end too soon" to litigate class certification.  *Id.*  Courts have likewise deemed a time period of one year sufficiently transitory.  *See Nielsen v. Preap*, 586 U.S. 392, 403–04 (2019) (plurality) (holding that habeas claims by people held in immigration detention, which lasts an average of one year, were inherently transitory); *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 35 (D.D.C. 2018) (holding that "claims arising out of pretrial detention or detentions for sentences of one year or less are inherently transitory").

---

[12] The inherently transitory exception to mootness can apply both when class certification has been denied and appealed, *see Geraghty*, 445 U.S. at 404 n.11, and when class certification has been sought but not yet ruled on, *see, e.g.*, *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546–47 (7th Cir. 2003) (explaining that "the mooting of the named plaintiff's claim in a class action by the defendant's satisfying the claim does not moot the action so long as . . . a motion for class certification has been made and not ruled on"); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir. 1981) (explaining that the case is not moot so long as "pending before the district court [is] a timely filed and diligently pursued motion for class certification."); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 307 (3d Cir. 2016) (explaining that the "relation-back doctrine encompasses successive, substantially similar motions to certify").  Here, Plaintiffs sought class certification on May 26, 2025, Dkt. No. 2, contemporaneously with their Complaint.

Under these cases, putative class members' claims are short-lived enough to trigger the inherently transitory exception. That Mr. Hagans was released from detention in a matter of months, while his Motion for Class Certification was pending, exemplifies this fact. By regulation, most class members' claims will expire within 65 days of arrest, by which point the Commission is required to have held a revocation hearing. *See* 28 C.F.R. § 2.215(f). In some instances, a class member's claims will last several months to a year because, for those facing criminal charges, the Commission can consent to a continuance of the revocation hearing pending disposition of a criminal case, which "invariably delays such a hearing by more than 65 days." *Davis v. U.S. Parole Comm'n*, No. 20-cv-2897, 2021 WL 5758820, at *5 (D.D.C. Dec. 3, 2021) (quoting Stephen Husk Decl.); *see* Memo ISO Preliminary Injunction, ECF No. 12-1, at 40 & n.8 (citing average length of pretrial detention). In either case, this time frame—somewhere between weeks and approximately a year—is sufficiently transitory to invoke the inherently transitory exception. *See Nielsen*, 586 U.S. at 403–04 (applying the exception to claims lasting one year on average).

Moreover, if sheer brevity did not satisfy the test's first prong for individuals whose revocation hearings trail their criminal trials, those individuals' claims would nevertheless qualify for the exception because they are of uncertain duration. Circuit courts have explained that the "essence" of the inherently transitory exception is "uncertainty about whether a claim will remain alive." *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 326 (4th Cir. 2022) (collecting cases) (internal quotation omitted). As particularly relevant here, the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103 (1975), found the inherently transitory exception applicable to claims lasting throughout pretrial detention because "[t]he length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time." It was therefore, according to the Supreme Court, "by no means certain that any given individual, named as plaintiff, would be in pretrial custody long

enough for a district judge to certify the class." *Id.* at 110 n.11. That uncertain timing is precisely the same for putative class members with trailed revocation hearings, for whom "release, dismissal of charges, a plea, or a verdict 'may' end the pretrial" phase of a case unpredictably, prompting a revocation hearing "before a class-certification decision." *J.D.*, 925 F.3d at 1310 (quoting *Gerstein*, 420 U.S. at 110 n.11); *see also Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) ("[T]he length of incarceration in a county jail [holding pre-trial detainees] generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory."); *Ramirez*, 338 F. Supp. 3d at 35.

*Second*, prong two of this Circuit's test—"whether some class members will retain a live claim at every stage of litigation"—is readily met here as well. *J.D.*, 925 F.3d at 1311. The Commission's automatic detention policy has not abated just because Mr. Hagans is no longer detained. The Commission itself counts the number of individuals held for a revocation hearing since 2020 to be 1,673, indicating that hundreds of individuals are so held per year. Desrosiers Decl., ECF No. 14-2, ¶ 12. Here, as in *Gerstein*, the "attorney representing the named [plaintiff] is a public defender" and the court can "safely assume that named [plaintiff's] counsel has other clients with a continuing live interest in the case." 420 U.S. at 111 n.11. Natalie Epps, the Deputy Chief of the Parole Division at the Public Defender Service for the District of Columbia (PDS), supervises a team of eight attorneys who represent people in supervised release revocation proceedings. Epps Decl., ECF No. 12-4, ¶¶ 1–3. PDS's Parole Division represents individuals at approximately 41 probable cause hearings per month and thus has a continuous set of clients currently affected by the Commission's violations.

In sum, whether Mr. Hagans' individual claim has become moot is of no moment because the inherently transitory exception to mootness squarely applies to these claims.

IV.    **Plaintiffs Satisfy Rule 23's Requirements.**

Plaintiffs satisfy Rule 23's numerosity, commonality, typicality, and adequacy requirements.[13] Defendants do not contest otherwise as to numerosity, typicality, or Mr. Hagans' adequacy as a class representative. Their limited objections to class certification lack merit.

A. **Mr. Hagans Is a Member of the Class Under the Inherently Transitory Exception.**

Because the inherently transitory exception applies, Defendants are incorrect that Mr. Hagans is not part of the class because he is no longer detained. *Contra* MTD at 34–36. Defendants rely solely on general statements of Rule 23's requirements; they point to no case in which the inherently transitory exception applied and yet the class was not certified because of the Rule 23(a) requirement that the class representative be part of the class. *See, e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (holding that class representative must have injuries matching putative class members' injuries). For good reason. Such a holding would render the inherently transitory exception useless and would disregard that exception's premise that a class certification motion "relate[s] back" to the time at which the class representative's claim was not moot. *J.D.*, 925 F.3d at 1308.

Defendants' position has, in fact, been squarely rejected in the context of adequacy, which is the Rule 23(a) requirement they invoke here in all but name. As this Circuit has held, "the very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates her inadequacy as a representative." *J.D.*, 925 F.3d at 1313; *id.* at 1308 ("Because the class possesses a concrete legal interest, the mootness of individual

---

[13] Plaintiffs have filed contemporaneously with this brief: (1) a revised proposed order granting class certification, which accounts for the intervening appearances by counsel from Jenner & Block LLP ("Jenner") on behalf of Mr. Hagans and the putative class; (2) a declaration as to the adequacy of Jenner's representation of the putative class; and (3) a declaration as to the adequacy of PDS's representation of the putative class.

claims *does not affect* the ability of representatives to litigate a controversy between the defendants and absent class members." (emphasis added)); *see also Lewis*, 743 F. Supp. 3d at 202 (to accept that a class representative with moot claims cannot adequately represent the class "would make a nullity of the Supreme Court's long-recognized 'inherently transitory' exception; the doctrine would only momentarily rescue the class action from mootness before it is dashed against the rocks of Rule 23").  Because Mr. Hagans was indisputably part of the class at the time he filed for class certification and because the inherently transitory exception applies, the Court must reject Defendants' unsupported theory that Rule 23(a) somehow precludes Mr. Hagans from serving as a class representative.

### B. The Class Satisfies Commonality.

The putative class satisfies commonality because "plaintiffs allege widespread wrongdoing by a defendant" in the form of "'a uniform policy or practice that affects all class members.'"  *D.L. v. District of Columbia*, 302 F.R.D. 1, 12 (D.D.C. 2013) (quoting *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017).  Defendants do not dispute that a common injury of that kind is sufficient for class certification.  Instead, they argue that not everyone in the class has suffered that injury because some may "waive" the probable cause hearing where the Commission is required to make a pre-revocation detention decision.  That contention lacks factual support and, in any event, it is legally flawed.

As a factual matter, Plaintiffs' injury stemming from unlawful detention is common to the whole class.  The theoretical possibility that some putative class members could waive their right to contest detention between a probable cause hearing and revocation hearing does not defeat commonality, as Defendants argue, because in practice, supervised releasees do not waive that right.  As explained by Natalie Epps, in her and her supervisees' experience representing hundreds of individuals in revocation proceedings, she is not aware of *any* individuals knowingly and

24

intelligently waiving their probable cause hearings.  Ex. A, Epps Suppl. Decl., ¶ 3.  The alleged common injury thus "affect[s] all or nearly all class members."  *Lewis*, 743 F. Supp. 3d at 204; *see also In re Rail Freight Fuel Surcharge Antitrust Litig*., 292 F. Supp. 3d 14, 92, 135 (D.D.C. 2017) (class definitions can include a "de minimis number of uninjured members" without running afoul of Rule 23), *aff'd*, 934 F.3d 619 (D.C. Cir. 2019).  Natalie Epps likewise explains that in PDS's experience, only in extremely rare, de minimis instances does a supervised releasee refuse to participate in revocation proceedings, but this is typically due to mental health struggles that would prevent a knowing and intelligent waiver of the right to a probable cause hearing.  Ex. A, ¶ 4; *cf. Godinez v. Moran*, 509 U.S. 389, 396 (1993) (to enter plea deal, defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him").  Unsurprisingly, then, Defendants do not point to a single instance of intelligent and voluntary waiver.

Moreover, legally speaking, based on Plaintiffs' allegations, all class members are necessarily injured by the challenged policy.  Plaintiffs allege that they are detained without statutory authorization or, in the alternative, pursuant to an automatic detention policy.  To the extent Defendants suggest there can be a waiver of the right to be free from illegal detention, the Court should reject that premise.  Plaintiffs allege that Defendants have no authority to hold *any* supervised releasees pending their revocation hearing—so whether someone has waived their probable cause hearing has no legal or factual significance here.  Even if Defendants do have such authority, Plaintiffs allege that Defendants are failing to make an individualized assessment as required by law, resulting in automatic and illegal detention as to all class members.  An individual cannot provide a legally competent waiver for pre-revocation release when they are not practically being availed of that opportunity.

Furthermore, the commonality concern Defendants raise is of no moment for the forward-looking relief sought by this Rule 23(b)(2) class. The purpose of ensuring there are not too many uninjured class members is so that they "do not contribute to the size of any damage award and [] cannot recover such damages," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 460 (2016)—rationales inapplicable to this Rule 23(b)(2) class action seeking non-monetary relief. *Cf. J.D.*, 925 F.3d at 1320 (explaining that "the precise membership of a (b)(2) class is considered largely inconsequential" because a "remedy obtained by one member will naturally affect others"). Here, that hypothetical class members could in theory waive Defendants' compliance with the law does not defeat commonality.

Finally, if the Court has any concern about the class definition, it may exercise its discretion to amend it *sua sponte. See Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 8 (D.D.C. 2018). For instance, the Court could simply modify Plaintiffs' proposed class definition as follows, which would address any concern regarding uninjured class members: "All people on supervised release for D.C. Code offenses who are or will be ***involuntarily*** detained by the United States Parole Commission pending a revocation hearing."

## C. Class Counsel are Adequate Representatives.

As courts in this district have repeatedly found, the Public Defender Service is prepared to vigorously represent the interests of the class as required by Rule 23(a)(4). *See, e.g., Davis v. U.S. Parole Comm'n*, No. 24-cv-1312, 2025 WL 457779, at *8 (D.D.C. Feb. 11, 2025) (finding that "[plaintiff] is well represented. His lawyers hail from the Public Defender Service for the District of Columbia . . ."); *Banks v. Booth*, No. 20-cv-849, 2022 WL 1091212, at *2 (D.D.C. Apr. 12, 2022) (holding that "class counsel have adequately represented the class"); *N.S. v. Hughes*, 335 F.R.D. 337, 354 (D.D.C. 2020), *modified on clarification sub nom., N.S. v. Dixon*, No. 20-cv-101, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) (holding that the "Court has no concerns about the

ability of the Public Defender Service to litigate this case. Therefore, plaintiff has demonstrated adequacy of representation as required by Fed. R. Civ. P. 23(a)(4).”). *See also Lewis*, 743 F. Supp. 3d at 202 (holding that adequacy of counsel was satisfied in a case where plaintiffs are represented by PDS because “there is [no] reason to doubt the caliber and motivation of the plaintiffs’ legal representatives”).

Contrary to Defendants’ baseless assertion, Plaintiffs *have* adduced evidence that the Public Defender Service represents virtually every class member. *See* Declaration of Natalie Epps, Dkt. 2-2, ¶ 3 (“The Parole Division represents every person on supervised release for D.C. Code offenses at their probable cause and revocation hearings unless there is an established conflict, which rarely occurs.”). Indeed, the Commission’s own regulations contemplate as much. *See* 28 C.F.R. § 2.214(b) (“Prior to the commencement of the probable cause hearing, the examiner shall advise the releasee that the releasee may accept representation by the attorney from the D.C. Public Defender Service who is assigned to that docket . . . .). Accordingly, Rule 23(a)(4) is satisfied.

## V.     Alternatively, Mr. Hagans’ Individual Claims are Capable of Repetition Yet Evading Review.

If the Court does not certify a class, it may still grant relief as to Mr. Hagans because his individual claims are also capable of repetition, yet evading review. A plaintiff’s claim qualifies for this mootness exception if its lifespan is “too short in duration to be fully litigated in the United States Supreme Court before it expires”—anything less than two years qualifies—and there is “a reasonable expectation that the same complaining party [will] be subjected to the same action again.” *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 321 323 (D.C. Cir. 2014) (citation omitted). Defendants contest only the latter requirement. “[T]he capable-of-repetition prong is not to be applied with excessive ‘stringency.’” *Id.* at 324 (quoting *Honig v. Doe*, 484 U.S.

305, 318 n.6 (1988)).  Accordingly, a "controversy is capable of repetition even if its recurrence is far from certain."  *Id.* (emphasis omitted).

Mr. Hagans meets the exception's modest requirements.  The Commission regularly detains individuals awaiting their revocation hearings—at least 1,673 times since 2020.  *See* Desrosiers Decl. ¶ 12.  The Commission also detains individuals for solely technical violations—nearly a third of revocation hearings proceed on such violations alone—and it detains individuals even when several judges have determined that such individual may be released pretrial.[14]  This prevalence makes it far from "speculative," MTD at 7, that Mr. Hagans' injury would recur.  *See* *Williams v. Walsh*, 648 F. Supp. 3d 70, 86 (D.D.C. 2022) (looking to agency's overall pattern of behavior).

Defendants' main response is to invoke an inapposite line of cases holding that, generally speaking, courts presume that a plaintiff will not violate "criminal laws" in the future.  *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018); *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974); *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983).  But that is not this case, where non-criminal, technical violations can and often do result in unlawful detention.  Here, Mr. Hagans faced a revocation hearing in part because he failed to attend treatment on four occasions for lack of transportation.  *See* Compl. ¶ 60.  These violations were not willful, as shown by the fact that Mr. Hagans proactively told his Parole Officer about each instance of missed treatment.  Indeed,

---

[14] Defendants erroneously represent that what happened to Mr. Hagans is "quite similar" to cases in which the Commission "restore[s] a releasee to supervised release instead of proceeding to a revocation hearing."  MTD at 7.  In fact, the Commission subjected Mr. Hagans to its automatic detention policy only to find at his revocation hearing *after months of detention* that there was no basis to revoke his supervised release.  That outcome underscores that the Commission would again detain Mr. Hagans upon a probable cause finding, no matter the merits of the allegations against him.  *See* Desrosiers Decl. ¶ 12 (data showing that the Commission chooses to proceed to a revocation hearing—which necessarily means months of detention—in the majority of cases in which it makes a probable cause finding).

supervised release includes many often-conflicting requirements, such as simultaneously holding

a job and attending mid-day appointments, that create a "reasonable expectation" of technical

violations that result in unlawful detention. *Ralls Corp.*, 758 F.3d at 323.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court certify the class

and deny Defendants' motions to dismiss.

Dated: August 21, 2025
          Washington, D.C.

          */s/ Elizabeth Henthorne*

| | |
|---|---|
| Hanna Perry (D.C. Bar No. 90003756) | Elizabeth Henthorne (D.C. Bar No. 1562688) |
| Zoé Friedland (D.C. Bar No. 1781910) | Maura E. Smyles (D.C. Bar No. 90006775) |
| Teressa Hamsher (D.C. Bar No. 90009447) | Ruby Giaquinto (D.C. Bar No. 90011104) |
| Public Defender Service for the | JENNER & BLOCK LLP |
| District of Columbia | 1099 New York Ave. N.W. |
| 633 3rd St. N.W. | Suite 900 |
| Washington, D.C. 20001 | Washington, D.C. 20001 |
| Tel. 202-824-2198 | Tel. (202) 639-6000 |
| Fax 202-824-2093 | Fax (202) 639-6066 |
| hperry@pdsdc.org | BHenthorne@jenner.com |
| zfriedland@pdsdc.org | MSmyles@jenner.com |
| thamsher@pdsdc.org | RGiaquinto@jenner.com |

*Counsel for Plaintiffs*