UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTOWAN HAGANS,

          Plaintiff,

    v.

PAROLE COMMISSION, et al.,

          Defendants.

Civil Action No. 25-1671 (ACR)

**<u>FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

ARGUMENT ...................................................................................................................... 1

I.      Hagans' Individual Claims Are Moot ................................................................... 1

II.     Two Statutes Authorize Detention Pending a Hearing on Revocation of Supervision ...... 5

        A.      18 U.S.C. § 4213(a)(2), as Incorporated into D.C. Code § 24-133(c)(2)(A),
                Authorizes Pre-Revocation Detention .................................................... 5

        B.      18 U.S.C. § 3583(d)-(i), as Incorporated Into D.C. Code § 24-133(c)(2), Itself
                Authorizes Pre-Revocation Detention .................................................... 9

                1.      18 U.S.C. § 3583(i) Authorizes Pre-Revocation Detention ...................... 9

                2.      18 U.S.C. § 3583(e)(3) Authorizes Pre-Revocation Detention ............... 11

        C.      Hagans' Position Has Far-Reaching Consequences ............................................. 14

III.    Hagans' Class Claims Fail ............................................................................ 16

        A.      Hagans is Not a Member of the Class That He is Seeking to Certify ................... 16

        B.      Hagans Does Not Plausibly Allege Commonality ................................................. 19

        C.      Hagans Fails to Establish Adequacy of Representation ....................................... 21

IV.     Hagans' Remaining Constitutional and Statutory Claims Fail as a Matter of Law ......... 22

V.      Hagans' Claims for Any Relief Other Than an Individualized Hearing Fail ................... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Iron & Steel Inst. v. EPA*,
  886 F.2d 390 (D.C. Cir. 1989) ................................................................................................ 13

*Amjad v. Schofer*,
  Civ. A. No. 24-1773 (CJN), 2024 WL 4416984 (D.D.C. Oct. 4, 2024) .................................. 10

*Camara v. Mastro's Rests. LLC*,
  952 F.3d 372 (D.C. Cir. 2020) ................................................................................................ 20

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983) .............................................................................................................. 1, 5

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
  560 F.3d 1291 (Fed. Cir. 2009) ................................................................................................ 7

*Connecticut v. Dep't of the Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) .......................................................................................... 7

*Davis v. Sent'g Comm'n*,
  716 F.3d 660 (D.C. Cir. 2013) ................................................................................................ 10

*Deylami v. Kvien*,
  Civ. A. No. 23-1393 (TSC), 2025 WL 219064 (D.D.C. Jan. 16, 2025) .................................. 10

*Disch v. Rasmussen*,
  417 F.3d 769 (7th Cir. 2005) .................................................................................................... 7

*Doyle v. Am. Home Prods. Corp.*,
  583 F.3d 167 (2d Cir. 2009) ...................................................................................................... 6

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
  431 U.S. 395 (1977) ................................................................................................................ 16

*Elbaor v. Tripath Imaging, Inc.*,
  279 F.3d 314 (5th Cir. 2002) .................................................................................................... 7

*FCC v. Consumers' Rsch.*,
  145 S. Ct. 2482 (2025) .............................................................................................................. 6

*Fisher v. Volz*,
  496 F.2d 333 (3d Cir. 1974) ...................................................................................................... 7

**Cases (cont.)**

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................ 16, 19, 21

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ................................................................................ 5, 17

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ................................................................................ 11

*Hajizadeh v. Blinken*,
    Civ. A. No. 23-1766 (LLA), 2024 WL 3638336 (D.D.C. Aug. 2, 2024) ................................ 10

*Honig v. Doe*,
    484 U.S. 305 (1988) ................................................................................ 2

*Ibrahim v. Spera*,
    Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702 (D.D.C. Sept. 6, 2024) ................................ 10

*In re Cisneros*,
    994 F.2d 1462 (9th Cir. 1993) ................................................................................ 7

*In re Dierschke*,
    975 F.2d 181 (5th Cir. 1992) ................................................................................ 7

*In re Gypsum Antitrust Cases*,
    565 F.2d 1123 (9th Cir. 1977) ................................................................................ 7

*In re Martel*,
    328 F. App'x 584 (10th Cir. 2009) ................................................................................ 7

*In re Moore*,
    No. 00-3019, 2000 WL 274220 (D.C. Cir. Mar. 8, 2000) ................................................................ 10

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ................................................................................ 17, 18

*Lane v. Williams*,
    455 U.S. 624 (1982) ................................................................................ 2, 3

*Langeman v. Garland*,
    88 F.4th 289 (D.C. Cir. 2023) ................................................................................ 19

*Leal v. Interstate Brands Corp.*,
    765 F.2d 145 (6th Cir. 1985) ................................................................................ 7

**Cases (cont.)**

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................... 20

*Myrtle v. Checker Taxi Co.*,
  279 F.2d 930 (7th Cir. 1960) ................................................................ 7

*Nat'l Wildlife Fed'n v. United States*,
  626 F.2d 917 (D.C. Cir. 1980) ......................................................... 1, 4

*Orozco v. Garland*,
  60 F.4th 684 (D.C. Cir. 2023) ............................................................ 13

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ........................................................................ 2, 3

*Roberts v. Sea-Land Servs., Inc.*,
  566 U.S. 93 (2012) ............................................................................ 13

*Rollins v. Fort Bend Indep. Sch. Dist.*,
  89 F.3d 1205 (5th Cir. 1996) ............................................................... 7

*Sen. Permanent Subcomm. on Investigations v. Ferrer*,
  856 F.3d 1080 (D.C. Cir. 2017) ....................................................... 1, 4

*Sec'y of Lab. v. M-Class Mining, LLC*,
  1 F.4th 16 (D.C. Cir. 2021) ................................................................. 4

*Slater v. U.S. Steel Corp.*,
  820 F.3d 1193 (11th Cir. 2016) ........................................................... 6

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ................................................................................ 2

*Sutherland v. McCall*,
  709 F.2d 730 (D.C. Cir. 1983) ..................................................... 23, 24

*Taylor v. D.C. Water & Sewer Auth.*,
  205 F.R.D. 43 (D.D.C. 2002) .............................................................. 7

*Torres v. Fla. Dep't of Corr.*,
  742 F. App'x 403 (11th Cir. 2018) ...................................................... 6

**Cases (cont.)**

*United States v. Ausby*,
  Crim. No. 72-0067 (BAH), 2020 WL 821023 (D.D.C. Feb. 19, 2020)....................................7

*United States v. Brown*,
  467 F.2d 419 (D.C. Cir. 1972) ...............................................................................................6

*United States v. Carpenter*,
  16 F.3d 1221 (6th Cir. 1994) .................................................................................................7

*United States v. Clark*,
  Crim. No. 17-0043, 2025 WL 1135075 (W.D.N.Y. Apr. 17, 2025)......................................12

*United States v. Cook*,
  594 F.3d 883 (D.C. Cir. 2010) ...............................................................................................7

*United States v. Fernandez*,
  --- F.4th ----, Crim. No. 25-0206, 2025 WL 2433528 (2d Cir. Aug. 25, 2025)......................13

*United States v. Gbemisola*,
  225 F.3d 753 (D.C. Cir. 2000) ...............................................................................................6

*United States v. Mercado*,
  774 F. Supp. 3d 446 (D. Conn. 2025) ...................................................................................13

*United States v. North*,
  708 F. Supp. 389 (D.D.C. 1988) .............................................................................................7

*United States v. Sanchez-Gomez*,
  584 U.S. 381 (2018)..............................................................................................................2, 3

*United States v. Weathers*,
  186 F.3d 948 (D.C. Cir. 1999) ..............................................................................................21

*United States v. White*,
  751 F. Supp. 2d 173 (D.D.C. 2010) ........................................................................................7

*United States v. Wilson*,
  134 F.3d 855 (7th Cir. 1998) ..................................................................................................7

*Verizon v. FCC*,
  770 F.3d 961 (D.C. Cir. 2014) ..............................................................................................10

*Victory v. Berks County*,
  Civ. A. No. 18-5170, 2019 WL 653788, (E.D. Pa. Feb. 15, 2019) ..........................................3

**Cases (cont.)**

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................... 19, 21

*Wannall v. Honeywell, Inc.*,
    775 F.3d 425 (D.C. Cir. 2014) ................................................................... 2

**Statutes**

18 U.S.C. Ch. 311 ............................................................................................. 9

18 U.S.C. § 3143 ....................................................................................... 13, 15

18 U.S.C. § 3143(a)(1) ................................................................................... 11

18 U.S.C. § 3413 ............................................................................................. 13

18 U.S.C. § 3583 ................................................................................... 9, 11, 15

18 U.S.C. § 3583(d)-(i) ........................................................................... passim

18 U.S.C. § 3583(e)(3) ................................................................... ii, 11, 12, 13

18 U.S.C. § 3583(i) ........................................................................... ii, 9, 10

18 U.S.C. § 3606 ............................................................................................. 9

18 U.S.C. § 4212 ............................................................................................. 22

18 U.S.C. § 4213(a)(2) ........................................................................... ii, 5, 15

18 U.S.C. § 40001(a) ....................................................................................... 15

D.C. Code § 2-1602(a)(1) ......................................................................... 21, 22

D.C. Code § 24-133(c)(2)(A) ............................................................... ii, 5, 7, 8

D.C. Code § 24-133(c)(2) ......................................................................... passim

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................... 16

Fed. R. Crim. P. 32.1 ..................................................................................... 12

**Rules (cont.)**

Fed. R. Crim. P. 32.1(a)(1) ................................................................. 11, 12, 13

Fed. R. Crim. P. 32.1(a)(6) ................................................................. 9, 11, 13

Fed. R. Crim. P. 41(c) ........................................................................... 6

Fed. R. Crim. P. 46(d) ......................................................................... 11, 12

**Regulations**

28 C.F.R. § 2.214(b) .......................................................................... 20, 22

Federal Defendants Parole Commission (the "Commission"), Acting Chair Patricia K. Cushwa, and Attorney General Pamela Bondi, by and through undersigned counsel, respectfully reply in support of their motion to dismiss Plaintiff Antowan Hagans' complaint, ECF No. 1.

## ARGUMENT

Hagans' claims are moot, and no exception to mootness applies. Two statutes authorize the Commission to detain a releasee pending a revocation hearing. Hagans fails to state a class claim, or any of his other claims, including a claim for relief other than a new individualized hearing.[1] For these reasons, this Court should dismiss Hagans' claims against Federal Defendants.

## I.  **Hagans' Individual Claims Are Moot**

Hagans concedes that his claims are moot, arguing only that he falls within the "capable of repetition, yet evading review" exception to mootness. He is mistaken. That exception "applies only in exceptional situations" where a plaintiff "can make a reasonable showing that he will again be subjected to the alleged illegality." *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983). It "requires more than the mere capability of repetition," and does not apply if "the possibility of repetition is speculative." *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 926 n.15 (D.C. Cir. 1980). "A theoretical possibility is not sufficient to qualify as capable of repetition; there must instead be a reasonable expectation or demonstrated probability that the action will recur." *Sen. Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (cleaned up).

To fall within the "capable of repetition" exception to mootness, Hagans would need to show that it is reasonably likely that the Commission will detain him pending a revocation hearing once again. He fails to make that showing. Indeed, Hagans does not even argue that he is likely to

---

[1]     Because Hagans' individual claims are moot and he fails to state a class claim, this Court can dismiss the entire case on these grounds without needing to address any of the merits issues.

commit another crime. *See* Pl.'s Resp. at 28, ECF No. 31 (arguing only that the Commission may detain him again for a technical violation, not that it may detain him again for a crime). That is just as well, as the "capable of repetition" doctrine is not "satisfied by the possibility that a party will be prosecuted for violating valid criminal laws." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (quotation marks omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution").

Hagan is "able—and indeed required by law—to prevent [the] possibility" that he will commit another crime "from occurring." *Lane v. Williams*, 455 U.S. 624, 633 n.13 (1982); *accord Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (same). Courts "assume [plaintiffs] will conduct their activities within the law." *O'Shea*, 414 U.S. at 497; *see also Honig v. Doe*, 484 U.S. 305, 320 (1988) ("we generally are unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury"). Hagans thus could not argue that he is likely to commit another crime in the future. Wisely, he does not make, and thus forfeits, such an argument. *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded"). He instead hangs his entire "capable of repetition" argument on the idea that the Commission is reasonably likely to detain him pending a revocation hearing again for a technical violation, an argument that fails for four separate reasons.

*First*, Hagans does not, in fact, even argue that he is reasonably likely to commit another technical violation, and thus forfeits any such argument. *See Wannall*, 775 F.3d at 428. Because Hagans does not assert that he is reasonably likely to commit another technical violation, he cannot argue that the Commission is reasonably likely to detain him for a technical violation in the future.

*Second*, and in any event, Hagans could not be heard to argue that he is reasonably likely to commit another technical violation. Just as a plaintiff cannot be heard to argue that he is going to commit another crime in the future, *see Sanchez-Gomez*, 584 U.S. at 391; *O'Shea*, 414 U.S. at 497, he likewise cannot be heard to argue that he is going to violate his conditions of supervision, even the technical conditions, again in the future. The "capable of repetition" doctrine applies only where a plaintiff is likely to experience a harm again "for reasons beyond [his] control." *Sanchez-Gomez*, 584 U.S. at 393. Whether or not Hagans complies his conditions of supervision is entirely within his control. Hagans is perfectly "able—and indeed required" to comply with his conditions of supervision. *Lane*, 455 U.S. at 633 n.13. Hagans is able to determine his own future—he can choose to refrain from violating his conditions of supervision again. What Hagans certainly cannot do, however, is leverage the threat that he will violate his conditions of supervision yet again in the future in order to bootstrap his way into the "capable of repetition" exception to mootness.

*Victory v. Berks County*, Civ. A. No. 18-5170, 2019 WL 653788, (E.D. Pa. Feb. 15, 2019), is instructive. There, the plaintiffs "argue[d] they are substantially likely to return to the . . . Jail because they could . . . commit a technical violation of their parole resulting in reincarceration." *Id.* at *6. Citing *Sanchez-Gomez*, the Court refused to indulge the argument that "the hypothetical prospect of . . . committing a parole violation—an act entirely within an individual's control—can defeat mootness." *Id.* The Court emphasized that the plaintiffs "possess[ed] the free will to comply with . . . the terms of their parole." *Id.* Hagans likewise possesses the free will to comply with the terms of his supervision, and thus cannot raise the possibility that he will violate his conditions of supervision again in the future as a basis to apply the "capable of repetition" exception to mootness.

*Third*, even assuming for argument's sake that Hagans is likely to commit another technical violation, he still fails to show a reasonable likelihood that the Commission will seek to revoke his

supervision based on such a technical violation. Hagans argues that "[t]he Commission [ ] detains individuals for solely technical violations," Pl.'s Resp. at 28, but adduces no evidence for this assertion. *See Sec'y of Lab. v. M-Class Mining, LLC*, 1 F.4th 16, 24 (D.C. Cir. 2021) (plaintiff bears burden to establish that "capable of repetition" doctrine applies). Regardless, even if Hagans is likely to commit another technical violation and the Commission sometimes revokes supervision for technical violations, he fails to show a reasonably likelihood that the Commission will revoke *his* supervision, specifically, for a technical violation. At most, there is a "theoretical possibility" that the Commission will revoke Hagans' supervision for a technical violation, *Sen. Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017), but such a possibility remains wholly "speculative," and thus, insufficient to trigger the "capable of repetition" exception to mootness, *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 926 n.15 (D.C. Cir. 1980).

Indeed, the idea that the Commission will detain Hagans for a technical violation alone is especially implausible given that the Commission previously has declined to detain Hagans for a technical violation. In September 2024, the Commission discovered that Hagans had violated his conditions of supervision by associating with a felon. *See* Ex. A, Probation Off. Mem. Despite this, the Commission took no action, declining to detain him or pursue revocation. *See* Ex. B, No-Action Ltr. The fact that the Commission previously declined to detain him for a technical violation makes it even less likely that the Commission will detain him for a technical violation in the future.

Finally, Hagans stresses that the Commission found probable cause to believe that he had committed technical violations when it detained him previously, but that is misleading. After all, the Commission simultaneously found probable cause to believe that he had committed a serious felony—possession of a firearm and ammunition by a felon. *See* Hr'g Digest at 2, ECF No. 12-9.

And in any event, the mere fact that a plaintiff experienced a harm before is not enough to show a reasonable likelihood that he will experience the same harm again. *See Lyons*, 461 U.S. at 109.

Indeed, the history of Hagans' technical violations in this case only makes less plausible any notion that the Commission would detain him for technical violations alone. The Commission did not merely find probable cause to believe that he committed technical violations—it actually found by a preponderance of the evidence that he had in fact committed these technical violations. *See* Notice at 2, ECF No. 25-2. Yet it still refused to revoke his supervision, instead releasing him from custody because it deemed the technical violations "insufficient for revocation." *Id.* Given that, it is not reasonably likely that the Commission would detain Hagans for a technical violation.

For all these reasons, Hagans' individual claims are moot.[2]

## II.    <u>Two Statutes Authorize Detention Pending a Hearing on Revocation of Supervision</u>

Two statutes—(1) 18 U.S.C. § 4213(a)(2) and (2) 18 U.S.C. § 3583(d)-(i), both of which D.C. Code § 24-133(c)(2) incorporates—authorize the Commission to detain a releasee pending a revocation hearing. Hagans offers various arguments to the contrary, but none have merit.

### A.    **18 U.S.C. § 4213(a)(2), as Incorporated into D.C. Code § 24-133(c)(2)(A), Authorizes Pre-Revocation Detention**

Hagans would have this Court nullify the Commission's power to detain a releasee pending a revocation hearing based on the authority of nothing but a bald assertion for which he cites no

---

[2]    The "inherently transitory" exception to mootness cannot save Hagans' individual claims from mootness. This doctrine allows a *class claim* to survive even though the named plaintiff's claims are moot if such claims are inherently transitory. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("an 'inherently transitory' class-action claim is not necessarily moot upon the termination of the named plaintiff's claim"). Put simply, the "inherently transitory" doctrine is about whether the class claims can survive, not whether a named plaintiff's individual claims can survive. Indeed, the doctrine presupposes that the named plaintiff's individual claims are moot. *Id.* For that reason, Hagans appropriately does not argue that his individual claims can proceed under the "inherently transitory" exception—only that his class claims can proceed under this doctrine.

case law, and indeed, which Supreme Court precedent rejects and basic logic refutes: the idea that "'[p]rocedures' are not 'authority.'" Pl.'s Resp. at 6 (citing nothing). Hagans hangs his entire argument on the mistaken idea that that because D.C. Code § 24-133(c)(2) elsewhere uses the word "authority," its separate use of the word "procedures" must exclude anything that confers authority. That position might have force if the terms "authority" and "procedures" were mutually exclusive, but they are not. The term "authority" means "[t]he official right or permission to act," while the term "procedure" means "[a] specific method or course of action." *Black's Law Dictionary* (12th ed. 2024). These terms may mean different things, but that does not mean that they are antonyms or mutually exclusive. Rather, they simply "do not operate on the same axis." *FCC v. Consumers' Rsch.*, 145 S. Ct. 2482, 2491 (2025). To illustrate the point, to be green means something different than to be a triangle, but something can be both green and a triangle because these two categories operate on different axes. So, too, a statute can simultaneously be procedural and provide authority.

The D.C. Circuit has recognized as much, holding that Federal Rule of Criminal Procedure 41(c)—which, as its name indicates, is a procedural rule—"*provides authority* to enter any premises for the purpose of enforcing [a] warrant, if the officer has probable cause to believe that the subject is located therein." *United States v. Brown*, 467 F.2d 419, 424 (D.C. Cir. 1972) (emphasis added); *see also United States v. Gbemisola*, 225 F.3d 753, 758 n.2 (D.C. Cir. 2000) (noting the idea that Federal Rule of Criminal Procedure 41(a) "provides authority for issuance of warrant to follow [a] beeper across state lines"). Binding precedent thus precludes Hagans' position, which is reason enough to reject it. And, as a matter of ordinary parlance, it is commonplace to say that a rule of procedure confers "authority" for this or that.[3] As such, to say

---

[3]    For examples of this, see, e.g., *Torres v. Fla. Dep't of Corr.*, 742 F. App'x 403, 408 (11th Cir. 2018); *Slater v. U.S. Steel Corp.*, 820 F.3d 1193, 1228 (11th Cir. 2016) (Tjoflat, J., specially concurring), *on reh'g en banc*, 871 F.3d 1174 (11th Cir. 2017); *Doyle v. Am. Home Prods. Corp.*,

that D.C. Code § 24-133(c)(2)(A)'s reference to "procedures" necessarily excludes anything that confers "authority" is like saying that something cannot be green because it is a triangle—the argument rests on a false dichotomy.

And as Federal Defendants previously explained, detaining a releasee pending a revocation hearing is a part of the overall procedure of revoking supervised release. *See* Fed. Defs.' Mem. at 16. ECF No. 25-1 (explaining the process of revoking supervised release and how detention plays into it). Hagans has no substantive response to this point. He just repeats, mantra-like, his assertion that "procedures" and "authority" are mutually exclusive, *see* Pl.'s Resp. at 8, which is incorrect.

Hagans also cries "absurdity," Pl.'s Resp. at 8, but "the D.C. Circuit gives the absurdity principle a narrow domain," one that he does not come close to meeting. *Connecticut v. Dep't of the Interior*, 344 F. Supp. 3d 279, 312 (D.D.C. 2018). A "statutory outcome is absurd if it defies rationality by rendering a statute nonsensical or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it." *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010) (cleaned up). That is not the case here. Federal Defendants' reading of D.C. Code § 24-133(c)(2)(A) to allow the Commission to detain releasees pending revocation hearings does not render the statute nonsensical or superfluous. And it is Hagans' own position,

---

583 F.3d 167, 170 (2d Cir. 2009); *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1302 (Fed. Cir. 2009); *In re Martel*, 328 F. App'x 584, 586 (10th Cir. 2009); *Disch v. Rasmussen*, 417 F.3d 769, 778 (7th Cir. 2005); *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002); *United States v. Wilson*, 134 F.3d 855, 866 (7th Cir. 1998); *Rollins v. Fort Bend Indep. Sch. Dist.*, 89 F.3d 1205, 1222 (5th Cir. 1996); *United States v. Carpenter*, 16 F.3d 1221, at *2 (6th Cir. 1994) (tbl.); *In re Cisneros*, 994 F.2d 1462, 1466 (9th Cir. 1993); *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992); *Leal v. Interstate Brands Corp.*, 765 F.2d 145, at *2 (6th Cir. 1985) (tbl.); *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1126 (9th Cir. 1977); *Fisher v. Volz*, 496 F.2d 333, 340 (3d Cir. 1974); *Myrtle v. Checker Taxi Co.*, 279 F.2d 930, 934 (7th Cir. 1960); *United States v. Ausby*, Crim. No. 72-0067 (BAH), 2020 WL 821023, at *1 (D.D.C. Feb. 19, 2020); *United States v. White*, 751 F. Supp. 2d 173, 174 n.3 (D.D.C. 2010); *Taylor v. D.C. Water & Sewer Auth.*, 205 F.R.D. 43, 50 (D.D.C. 2002); *United States v. North*, 708 F. Supp. 389, 397 (D.D.C. 1988).

not Federal Defendants', that "creates an outcome so contrary to perceived social values that Congress could not have intended it." *Id.* Hagans cannot, and does not try, to explain why Congress would deny the Commission the authority to protect the public interest by detaining releasees who pose a danger to others or themselves, are likely to fail to appear for further proceedings, or commit frequent and/or serious offenses. *See* 18 U.S.C. § 4214(a)(1)((A)(ii)-(iv). Such a glaring gap in the Commission's powers would be especially inexplicable given that Congress previously had given the Commission the authority to detain parolees pending their revocation hearings. *Id.* For Hagans' theory to hold water, he must posit that Congress empowered the Commission to detain parolees pending revocation hearings, but then later inexplicably decided to take that power back when it largely replaced parole with supervised release. Why would Congress do such a thing? Hagans provides no rational explanation, as one does not exist—the idea that Congress would do that is utterly implausible. Federal Defendants' position, in contrast, makes perfect sense: when Congress largely abolished parole and created supervised release, it preserved the Commission's preexisting authority to protect the public interest by detaining offenders pending their revocation hearings.

Last, Hagans gives short shrift to D.C. Code § 24-133(c)(2)(A)'s use of the phrase "except that," which makes clear beyond cavil that Congress did *not* intend for the Commission's authority under the statute to be exactly the same as a court's authority under 18 U.S.C. § 3583(d)-(i). Simply put, if Congress had wanted the Commission to have exactly and only the authority that 18 U.S.C. § 3583(d)-(i) provides, it would not have used the phrase "except that." Hagans counters that the phrase "except that" is a one-way ratchet that can only contract but not expand the scope of the Commission's authority, *see* Pl.'s Resp. at 8, but that is a tortured reading of the statute as a matter of basic semantics and linguistics. D.C. Code § 24-133(c)(2)(A) does not say that its "except that" language can only ever limit, but never expand, the Commission's authority. *See* D.C. Code § 24-

133(c)(2)(A). Rather, the phrase's plain import is that the Commission must follow the procedures of 18 U.S.C. Chapter 311 regardless of whether doing so expands, limits, or has no effect on the authority it otherwise has. In other words, if following the procedures of 18 U.S.C. Chapter 311 expands the Commission' authority, then so be it—that is just what the statute's plain text requires. Nothing in the statute says that the Commission must follow those procedures only if doing so limits its authority but not if doing so expands its authority—that is a textually untenable position.

**B.    18 U.S.C. § 3583(d)-(i), as Incorporated Into D.C. Code § 24-133(c)(2), Itself Authorizes Pre-Revocation Detention**

Two provisions of Section 3583 make clear that the statute confers pre-revocation detention authority: the statute (1) expressly authorizes the issuance of warrants, and (2) incorporates Federal Rule of Criminal Procedure 32.1(a)(6), which provides for detention pending a revocation hearing.

### 1.    18 U.S.C. § 3583(i) Authorizes Pre-Revocation Detention

18 U.S.C. § 3583(i)'s plain language makes clear that a "warrant" may be "issued on the basis of" a "violation of a condition of supervised release." Although that should be the end of the matter, Hagans nonetheless insists that in fact, 18 U.S.C. § 3606 (which he argues does not apply to the Commission) is what authorizes the warrant's issuance. This argument misses the point—18 U.S.C. § 3583(i) plainly presupposes authority to issue a warrant, and D.C. Code § 24-133(c)(2) in turn incorporates 18 U.S.C. § 3583(i)'s authority. Indeed, D.C. Code § 24-133(c)(2) specifically incorporates the authority set out in certain provisions of 18 U.S.C. § 3583, including subsection (i), but not others. Hagans' argument that 18 U.S.C. § 3583(i) does not permit a "warrant" to be "issued on the basis of" a "violation of a condition of supervised release" does not square with 18 U.S.C. § 3583(i)'s plain language. It does not matter, as Hagans argues, whether 18 U.S.C. § 3606 also authorizes a warrant's issuance. At a minimum, 18 U.S.C. § 3583(i) presupposes the authority

to issue warrants, and D.C. Code § 24-133(c)(2) in turn incorporates such authority. Accordingly, 18 U.S.C. § 3583(i) authorizes the Commission to detain pending a revocation hearing.

Hagans' argument that authority to issue a "warrant" does not include detention authority for longer than a brief period is meritless. The D.C. Circuit squarely has held that an arrest warrant provides "authority to detain a defendant pending a revocation hearing if there is probable cause to believe he has violated the terms of supervised release." *In re Moore*, No. 00-3019, 2000 WL 274220, at *1 (D.C. Cir. Mar. 8, 2000); *see also Verizon v. FCC*, 770 F.3d 961, 968 n.11 (D.C. Cir. 2014) ("Parties may cite unpublished opinions 'as precedent.'" (quoting D.C. Cir. R. 32.1(b)(1))); *Davis v. Sent'g Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013) (an "unpublished [D.C. Circuit] decision is precedential"); *Ibrahim v. Spera*, Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (explaining, as to an unpublished D.C. Circuit decision, that "[t]his Court is bound to follow this precedent"); *Deylami v. Kvien*, Civ. A. No. 23-1393 (TSC), 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025) (citing an unpublished D.C. Circuit decision to conclude that "[r]ecent D.C. Circuit precedent forecloses [a] claim"); *Amjad v. Schofer*, Civ. A. No. 24-1773 (CJN), 2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024) (treating an unpublished Circuit decision as binding).[4] While Hagans ignores this D.C. Circuit decision, this Court should not do so.

The D.C. Circuit's logic is sound. An "arrest warrant . . . direct[s] a law-enforcement officer to arrest and take a person into custody." *Warrant*, Black's Law Dictionary (Bryan A. Garner ed., 12th ed. 2024). Nothing in this definition imposes any sort of temporal limitation. And perhaps even more tellingly, Hagans offers no authority for his dubious insistence that a warrant's detention

---

[4]    Other judges in this District have taken a different approach, one that Federal Defendants believe is inconsistent with D.C. Circuit authorities such as *Verizon* and *Davis*. *See, e.g.*, *Hajizadeh v. Blinken*, Civ. A. No. 23-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (concluding that "a [D.C. Circuit] panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." (quoting D.C. Cir. R. 36(e)(2)))

authority is temporally limited. Indeed, his Hagans' only authority for this argument is *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975), a remarkably inapposite citation because *Gerstein* specifically addressed only *warrantless* arrests based on nothing but "a policeman's on-the-scene assessment of probable cause." *Gerstein* thus did not address, and has nothing to do with, arrests pursuant to a warrant. The fact that Hagans is unable to cite anything actually involving a warrant is telling.

2.    18 U.S.C. § 3583(e)(3) Authorizes Pre-Revocation Detention

18 U.S.C. § 3583(e)(3), which governs revocation of supervision, states that courts revoke supervision "pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release." Federal Rule of Criminal Procedure 32.1(a)(6) "governs release pending a hearing on a violation of probation or supervised release." Fed. R. Crim. P. 46(d). That rule, in turn, addresses a "person held in custody for violating . . . supervised release," and provides that a "magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." Fed. R. Crim. P. 32.1(a)(1), (6). Section 3583(e)(3) thus incorporates Rule 32.1(a)(6)'s provisions for detaining a releasee believed to have violated a condition of supervision pending a revocation hearing. Hagans presents five arguments in his response, none meritorious.

*First*, Hagans incorrectly argues that 18 U.S.C. § 3583(e)(3) cannot give the Commission authority because it "directs *courts*—not the Commission." Pl.'s Resp. at 11. That is an audacious argument given that *all of* 18 U.S.C. § 3583, not just subsection (e)(3) section, is directed at courts and *none* of it is directed at the Commission. *See generally* 18 U.S.C. § 3583. The flaw in Hagans' argument is that although Section 3583(e)(3) establishes procedure for courts to follow, D.C. Code § 24-133(c)(2) then directs the Commission to follow the same procedures. Accordingly, the fact that Section 3583(e)(3) directs courts is irrelevant. Indeed, Hagans' argument would render D.C. Code § 24-133(c)(2)'s incorporation of 18 U.S.C. § 3583(d)-(i) a complete and total nullity. By his logic, D.C. Code § 24-133(c)(2)'s express incorporation of 18 U.S.C. § 3583(d)-(i) has no effect

11

on the Commission whatsoever because 18 U.S.C. § 3583(d)-(i) is directed at courts rather than the Commission. That is sophistry. Congress expressly incorporated 18 U.S.C. § 3583(d)-(i) into D.C. Code § 24-133(c)(2) because it wanted 18 U.S.C. § 3583(d)-(i)'s procedures to apply to the Commission, not to have no impact on the Commission. Hagans asks, "Why did Congress, in the D.C. Code, explicitly direct the Commission to use the procedures of chapter 311 of title 18?" Pl.'s Resp. at 11. But the fact is that Congress incorporated 18 U.S.C. § 3583(e)(3) into D.C. Code § 24-133(c)(2). A better question for Hagans is, why would Congress have expressly incorporated 18 U.S.C. § 3583(e)(3) into D.C. Code § 24-133(c)(2) if doing so had no effect on the Commission? The idea that Congress did so refutes itself. Hagans' argument boils down to pedantic word game.

*Second*, Hagans argues that "a Federal Rule cannot confer detention authority," Pl.'s Resp. at 12, but this argument misses the point. Even if Federal Rule of Criminal Procedure 32.1 itself cannot confer detention authority, 18 U.S.C. § 3583(e)(3)—which is a statute—itself incorporates Rule 32.1. To the extent that detention authority requires a statute, 18 U.S.C. § 3583(e)(3) is that statute through its incorporation of Rule 32.1. It thus is trite to say that Rule 32.1 "cannot by itself authorize pre-hearing detention." *United States v. Clark*, Crim. No. 17-0043, 2025 WL 1135075, at *3 (W.D.N.Y. Apr. 17, 2025). The point is not that Rule 32.1 "by itself" authorizes pre-hearing detention, *id.*, but that 18 U.S.C. § 3583(e)(3) authorizes detention by incorporating Rule 32.1.

*Third*, Hagans argues that Section 3583(e)(3) incorporates Rule 32.1 only with respect to "revocation decisions, not pre-revocation detention," Pl.'s Resp. at 12 n.10, but that is just not true. Section 3583(e)(3) incorporates "the Federal Rules of Criminal Procedure applicable to revocation of . . . supervised release." 18 U.S.C. § 3583(e)(3). Rule 32.1 applies to revocation of supervised release. *See* Fed. R. Crim. P. 32.1; *see also* Fed. R. Crim. P. 46(d). Section 3583(e)(3) by its plain text thus incorporates all of Rule 32.1, not just some of it. And Rule 32.1 expressly deals with pre-

revocation detention. *See* Fed. R. Crim. P. 32.1(a)(6). So contrary to Hagans' argument, Section 3583(e)(3) incorporates Rule 32.1 with respect to both pre-revocation detention and revocation decisions alike. Regardless, that distinction is not meaningful, given that pre-revocation detention is part of the revocation procedure, as noted previously. *See* Fed. Defs.' Mem. at 16; *supra* § II.A.

*Fourth*, Hagans points out that 18 U.S.C. § 3143 applies only to judicial officers, not to the Commission, *see* Pl.'s Resp. at 13 n.11, but that argument, too, misses the point. 18 U.S.C. § 3413 is incorporated into Rule 32.1, which itself is incorporated into 18 U.S.C. § 3583(e)(3), which in turn is incorporated into D.C. Code § 24-133(c)(2), which confers authority upon the Commission. It thus is meaningless to say 18 U.S.C. § 3143 applies to judicial officers, not to the Commission, because "[t]hrough a series of cross-references," D.C. Code § 24-133(c)(2) itself incorporates 18 U.S.C. § 3143's pre-revocation detention provision. *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 103 (2012); *see also Orozco v. Garland*, 60 F.4th 684, 686 (D.C. Cir. 2023) (the statute at issue operated "through a series of statutory cross-references"); *Am. Iron & Steel Inst. v. EPA*, 886 F.2d 390, 399 (D.C. Cir. 1989) (the regulation at issue operated "through a series of cross references").

*Fifth*, Hagans argues that 18 U.S.C. § 3143 does not authorize pre-revocation detention, but that is incorrect for all the reasons Federal Defendants previously explained. *See* Fed. Defs.' Mem. at 24-25. Hagans' citation for the idea that 18 U.S.C. § 3143 does not allow pre-revocation detention is *United States v. Mercado*, 774 F. Supp. 3d 446 (D. Conn. 2025), a deeply flawed ruling that every single District Judge to address it has rejected. *See* Fed. Defs.' Mem. at 32. Indeed, the Second Circuit recently reversed *Mercado* unanimously, holding that 18 U.S.C. § 3143 authorizes pre-revocation detention while rejecting every aspect of *Mercado*'s reasoning. *See United States v. Fernandez*, --- F.4th ----, Crim. No. 25-0206, 2025 WL 2433528, at *1 (2d Cir. Aug. 25, 2025).

###### C.    Hagans' Position Has Far-Reaching Consequences

Recognizing that his position has intolerable consequences, Hagans asks this Court to blind itself to them. That will not do. Hagans is asking this Court to take a radical action. It is important to understand the consequences of such an action. Indeed, Hagans' insistence that this Court ignore the consequences of his position is itself a tacit admission that those consequences are untenable.

*First*, holding that the Commission lacks pre-revocation detention authority would indeed mean that it sometimes will be impossible to detain persons who pose a danger to the community or risk of flight. Hagans overlooks the fact that some violations of conditions of supervision cannot be prosecuted, but still justify pre-revocation detention. For example, a releasee who poses a flight risk may violate a condition of supervision in a way that does not constitute a crime. Although he cannot be prosecuted because he did not commit a new crime, pre-revocation detention may be proper due to the risk that he otherwise will fail to appear for a revocation hearing. To give another example, a releasee may violate a condition of supervision in a way that poses a danger to others, but for one reason or another does not constitute a crime. While the releasee cannot be prosecuted because he did not commit a new crime, pre-revocation detention may still be proper because he poses a danger to the community. Hagans also ignores the fact that even if a releasee commits a new crime justifying his detention, the crime may not be prosecuted for one reason or another. It simply is a reality of the criminal justice system that for various reasons, not every criminal offense is prosecuted. If a releasee commits a crime but is not prosecuted for it, stripping the Commission of pre-revocation detention authority would mean leaving the public exposed to a dangerous person. Finally, consider a convicted sex offender who refuses to participate in mandatory sex offender treatment. While refusing to participate in such treatment is not a crime, it poses a danger to others. In these ways and others, adopting Hagans' position virtually would ensure that some, perhaps many, people who pose a danger to the community or risk of flight will not be detained.

*Second*, the logical implication of Hagans' argument is that the Commission lacks authority even to arrest a releasee believed to have violated a condition of supervision and bring him to a probable cause hearing. Hagans asks the Court to ignore this, insisting that "[t]hat is not the subject of this case," Pl.'s Resp. at 15, but it is the inescapable consequence of his position. He argues that the Commission lacks authority to "issue a warrant and retake" a releasee, 18 U.S.C. § 4213(a)(2), or issue "a warrant" for a releasee's arrest, *id.* § 3583(i). If he is right, then the Commission would lack authority even to arrest a releasee and bring him to a probable cause hearing. Should Hagans prevail, other defendants undoubtedly will cite this Court's decision to challenge the Commission's authority even to conduct arrests. Hagans conspicuously cites no other statute that would give the Commission arrest authority. He instead asks this Court to stick its head in the sand and ignore that adopting his position would have such a consequence. The Court should decline his invitation.

*Third*, Hagans' position—to wit, that neither 18 U.S.C. § 3583(d)-(i) nor 18 U.S.C. § 3143 authorize pre-revocation detention—would mean that no statute authorizes even a federal district court to detain a releasee pending a revocation hearing. Hagans argues that perhaps federal courts can detain persons without any statutory authority because the Non-Detention Act might not apply to them at all (though he conspicuously does not commit himself to this position). That is a mighty slender reed on which to hang a federal district court's authority to detain a releasee pending a revocation hearing. The Non-Detention Act, after all, states that "[n]o citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 U.S.C. § 40001(a). If the federal judiciary is part of "the United States," *id.*, within the statute's meaning, then Hagans' position—i.e., that no statute authorizes federal courts to detain releasees pending revocation hearings—necessarily would mean that courts lack pre-revocation detention authority.

It is unsurprising that Hagans asks this Court to ignore the intolerable consequences of adopting his position. But this Court, unlike him, does not have the luxury of being able to ignore the consequences of its rulings. This Court's decisions are important; they have repercussions that go beyond this case. The Court should not blind itself to those repercussions, as Hagans requests.

## III.    **Hagans' Class Claims Fail**

In moving to dismiss, Federal Defendants explained that Hagans fails to state a class claim because he fails to satisfy three of Federal Rule of Civil Procedure 23(a)'s requirements: (1) that he is a member of the class that he is seeking to certify, (2) commonality, and (3) adequacy of representation. While Hagans offers counter-arguments on each of these points, none have merit.

### A.    **Hagans is Not a Member of the Class That He is Seeking to Certify**

Hagans seeks to certify a class of "[a]ll people on supervised release for D.C. Code offenses who are or will be detained by the United States Parole Commission pending a revocation hearing." Mot. Class Cert. at 1, ECF No. 2. But Hagans himself does not satisfy this definition, as he is not detained and fails to show that the Commission will detain him again. *See* Defs.' Mem. at 34-35.[5]

In response, Hagans offers a tortured non-sequitur: i.e., that he "is a member of the class under the inherently transitory exception." Pl.'s Resp. at 23 (cleaned up). That is incoherent. The "inherently transitory" exception has nothing whatsoever to do with whether Hagans satisfies the definition of the class that he seeks to certify. Rather, as explained earlier, this doctrine merely

---

[5]    Although Hagans no doubt was part of the class at the time that he filed suit, that is not the relevant question. A named plaintiff must satisfy the class definition at the time that the district court rules on the question of class certification. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (class certification was improper because the named plaintiffs did not satisfy the class definition "at the time the class was certified"); *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 406 n.12 (1977) ("Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members . . . . Where no class has been certified, however," a named plaintiff must be part of the class).

allows a class action to survive even though the named plaintiff's claims are moot if such claims are inherently transitory. *See Genesis Healthcare*, 569 U.S. at 75; *supra* § I n.2. That does not remotely imply that the named plaintiff somehow continues to satisfy the class definition. Indeed, the "inherently transitory" doctrine is a mootness concept, and thus has nothing whatsoever to do with Rule 23's requirement that a named plaintiff must be part of the class that he seeks to certify. Conspicuously, Hagans fails to cite a single case in which a court held that a plaintiff remained part of the class he sought to certify—even though he failed to satisfy the class definition—because the "inherently transitory" exception to mootness applied. The idea that Hagans somehow remains part of the putative class, even though he is not being detained and fails to demonstrate that the Commission will detain him again, because his claims are inherently transitory makes no sense.

Hagans' reliance on *J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019), is misplaced because *J.D.* undermines, rather than supports, his position. There, the government had argued that one of the named plaintiffs was not part of the class she sought to certify. *See id.* at 1320. The D.C. Circuit rejected this argument not because her claim was inherently transitory, but only because the district court's unchallenged factual finding established that she was in fact part of the class she sought to certify at the time of class certification. *Id.* While the Court concluded that the plaintiff's claims were inherently transitory, *see id.* at 1312, that analysis was separate and distinct from its analysis of whether the plaintiff was part of the class that she sought to certify, *id.* at 1320. At no point did the Court suggest that the plaintiff was still part of the class she sought to certify because her claims were inherently transitory. *Id.* Accordingly, nothing in *J.D.* stands for the proposition that a named plaintiff remains part of the class that he seeks to certify if his claims are inherently transitory.

In arguing otherwise, Hagans relies on a line from *J.D.* that has nothing to do with the issue here. There, the D.C. Circuit made the unremarkable observation that "the mootness of a plaintiff's

claim" does not necessarily make her "inadequa[te] as a representative." *J.D.*, 925 F.3d at 1313. Federal Defendants agree completely, but that is wholly inapposite to the relevant issue here—i.e., whether the named plaintiff is part of the class that he seeks to certify. As Federal Defendants have explained, whether a named plaintiff is part of the class is an entirely different issue than whether a plaintiff's claims are moot, *see* Fed. Defs.' Mem. at 34-36, and Hagans tellingly fails to cite a single case equating these two separate issues. Again, mootness is just a different thing than Rule 23's requirement that a plaintiff be part of the class. *Id.* Nothing that *J.D.* said about mootness has anything to do with whether a named plaintiff is part of the class. As such, Hagans' assertion that *J.D.* "squarely rejected" Federal Defendants' position, Pl.'s Resp. at 23, is demonstrably untrue.

Finally, Hagans insists that honoring Rule 23's requirement that a named plaintiff be part of the class "would render the inherently transitory exception useless," Pl.'s Resp. at 23, but that is just incorrect. Often, a plaintiff whose claims are moot will still remain part of the class. An obvious way this can happen is when a class is defined with reference to something that happened to a person rather than something that is still happening to a person on an ongoing basis—e.g., a class of "everyone who was hurt by X" rather than "everyone who is being hurt by X." In such cases, the named plaintiff's claims may become moot once he no longer remains injured, but he will continue to satisfy the class definition. To give another example, a plaintiff with moot claims may continue to satisfy the class definition when it becomes impossible to grant him any relief even though he remains injured. Consider a plaintiff who challenges an undergraduate admissions policy and tries to certify a class of "everyone rejected because of the policy," but then attends and graduates from a different school while the suit remains pending. The plaintiff may remain injured, but providing relief will be impossible, so his claims are moot. Yet he continues to meet the class

definition. Simply stated, Hagans' alarmist claim that honoring Rule 23's command that a named plaintiff must be part of the class will nullify the "inherently transitory" exception is just not true.

The fact is, Hagans does not satisfy the class definition. *See* Mot. Class Cert., ECF No. 2. The Supreme Court repeatedly has held that Rule 23(a) requires a class representative to be part of the class he seeks to certify. *See* Fed. Defs.' Mem. at 23 (collecting case citations). Although Hagans would have this Court simply ignore that requirement, this Court is not at liberty to do so.

###    B.    Hagans Does Not Plausibly Allege Commonality

In moving to dismiss, Federal Defendants explained that Hagans fails to show commonality because releasees who have consented to their detention pending their revocation hearings have suffered no injury at all. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Falcon*, 457 U.S. 147, 157 (1982)). Because releasees who have consented to their own detentions pending their revocation hearings have suffered no injury at all, they plainly have not suffered the same injury as other putative class members. Yet the proposed class sweeps broadly enough to include releasees who consented to their detentions. While that would not necessarily defeat class certification if only a de minimis number of releasees consent to detention, Hagans pleads no facts whatsoever to support a plausible inference that the number of releasees who have consented to their detentions is de minimis. For that reason, Hagans fails to show commonality.

Hagans' counterarguments are wholly inadequate. Hagans relies on a declaration attached to his opposition in an effort to show that few releasees consent to detention, but he cannot rely on such external materials to survive dismissal under Rule 12(b)(6) because review is limited to the four corners of the "complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Langeman v. Garland*, 88 F.4th 289, 291

(D.C. Cir. 2023) (cleaned up). In determining whether Hagans states a class claim, then, the Court must ignore his newly offered declaration and stick only to the facts pleaded in his complaint.

In any event, Hagans' newly adduced declaration does nothing to show that the number of releasees who consent to detention is de minimis. His only evidence of this is the attestation of a Public Defender Service supervisor who says that she personally is "not aware of any individuals knowingly and intelligently waiving their probable cause hearings." 2d Epps Decl. ¶ 3, ECF No. 31-1. But the fact that she is unaware of such a thing does not mean that it does not happen; it can just as easily speak to the limits of her subjective awareness. She offers no reason to assume that if a releasee consents to detention, she necessarily would know about it. And while she declares that releasees who "refuse to participate in the revocation process . . . typically" have "mental health struggles that would prevent a knowing and intelligent waiver of a right to a probable cause hearing," *id.* ¶ 4, that assertion is speculative, threadbare, and conclusory, and thus not entitled to be credited. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("conclusory allegations [in] an affidavit . . . render it inadequate"); *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 375 (D.C. Cir. 2020) ("conclusory allegations [in] an affidavit . . . render it inadequate" (cleaned up)).

There is an obvious explanation, moreover, for why Hagans' declarant would be unaware of releasees consenting to detention: her experience necessarily is limited to releasees whom the Public Defender Service represents. But releasees sometimes choose to represent themselves rather than accept attorney assistance. Indeed, a Commission regulation expressly provides that a releasee can "waive the assistance of an attorney at the probable cause hearing." 28 C.F.R. § 2.214(b). If a releasee waives attorney assistance, then the Public Defender Service would not know about him. Other releasees are detained—and their probable cause hearings conducted—outside the District of Columbia, so the Public Defender Service would not know about them either. For these reasons,

Hagans' declarant has only a limited and incomplete view of the revocation process, and thus is in no position to attest reliably that no or only a de minimis number of releasees consent to detention.

Equally meritless is Hagans' argument that "all class members are necessarily injured by the challenged policy." Pl.'s Resp. at 25. That argument ignores that as a matter of law, a releasee who has consented to detention—even a detention that otherwise would be unlawful—has suffered no legal injury from it. This follows from basic principles of waiver, under which "[w]hen an error is waived, . . . it is extinguished; the result is that there is no error at all." *United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999). Accordingly, even assuming that pre-revocation detention otherwise would be unlawful, if a releasee waives challenge to his detention, then "there is no error at all." *Id.* Tellingly, Hagans offers no response to this argument, failing to engage with it.

Finally, Hagans attempts to brush aside commonality concerns by arguing that they are "of no moment," Pl.'s Resp. at 26, an argument this Court should reject. The Supreme Court squarely has held that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores*, 564 U.S. at 349-50 (quoting *Falcon*, 457 U.S. at 157). If that command means anything, it means that the class cannot include persons who have suffered no injury whatsoever. Hagans asks the Court to disregard Supreme Court precedent. It should not.

## C.      Hagans Fails to Establish Adequacy of Representation

Last, Hagans fails to show adequacy of representation because the Public Defender Service is forbidden from representing anybody unless he or she is "financially unable to obtain adequate representation." D.C. Code § 2-1602(a)(1). Although Public Defender Service attorneys are both skilled and motivated, that simply cannot make up for the fact that the statute that creates the Public Defender Service and authorizes it to represent anyone in the first place does not authorize it to represent a meaningful number of putative class members. Indeed, Hagans does not even argue that the number of putative class members who can afford adequate representation is de minimis.

Hagans' counterarguments are unpersuasive. First, he notes that a regulation provides that "[p]rior to the commencement of the probable cause hearing, the examiner shall advise the releasee that the releasee may accept representation by the attorney from the D.C. Public Defender Service who is assigned to that docket." 28 C.F.R. § 2.214(b). But this regulation merely presupposes that a releasee is "financially unable to obtain adequate representation," D.C. Code § 2-1602(a)(1), so that the Public Defender Service may represent him. The regulation does not purport to authorize the Public Defender Service to represent anyone not enumerated in D.C. Code § 2-1602(a)(1).

Similarly unpersuasive is Hagans' reliance on a previously-filed declaration attesting that the Public Defender Service "represents every person on supervised release for D.C. Code offenses at their probable cause and revocation hearings unless there is an established conflict, which rarely occurs." 1st Epps Decl. ¶ 3, ECF No. 2-2. Hagans filed this declaration before Federal Defendants had raised the issue that the Public Defender Service is unauthorized to represent persons who can afford adequate representation, so his declarant simply (and unsurprisingly) failed to account for the fact that the Public Defender Service does not represent such persons. *Id.* Thus, her barebones assertion that the Public Defender Service represents all releasees during revocation proceedings— made without even considering the fact that the Public Defender Service does not represent persons who can afford adequate representation—is unreliable, and this Court should not accept it as true.

## IV.    <u>Hagans' Remaining Constitutional and Statutory Claims Fail as a Matter of Law</u>

Hagans' procedural due process, substantive due process, equal protection, and 18 U.S.C. § 4212 claims fail as a matter of law for the reasons that Federal Defendants explained in their response to Hagans' motion for a preliminary injunction. *See* Fed. Defs.' Mem. at 32. As Hagans' response to Federal Defendants' motion to dismiss makes clear, the parties agree that this Court may rely on their preliminary injunction papers with respect to those claims. *See* Pl.'s Resp. at 17.

## V.    Hagans' Claims for Any Relief Other Than an Individualized Hearing Fail

In moving to dismiss, Federal Defendants explained that even assuming that Hagans states a claim on the merits, the only "appropriate remedy" would be "a writ of mandamus to compel the Commission's compliance . . . not a writ of habeas corpus to compel release." *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983). As such, Federal Defendants explained, Hagans fails to state a claim for any other form of relief. Hagans' argument that *Sutherland* does not apply is unpersuasive. According to him, *Sutherland* does not apply because the putative class alleges "that their present detention is itself unlawful because it has not been justified based on the statutorily enumerated factors." Pl.'s Resp. at 18. But in *Sutherland*, 709 F.2d at 732, the plaintiff made a materially identical argument—i.e., that his detention was unlawful because the Commission did not timely hold a revocation hearing. As such, the mere fact that Hagans characterizes his claim as a challenge to the lawfulness of his detention does not remove this case from *Sutherland*'s scope.

And while Hagans argues that there is an exception "where a petitioner establishes that the Commission's delay in holding [the] hearing was both unreasonable and prejudicial," *Sutherland*, 709 F.2d at 732, he personally cannot avail himself of this exception because the Commission already has released him. Nor does he plausibly allege that any error by the Commission prejudiced the putative class members. In *Sutherland*, the plaintiff failed to demonstrate prejudice because he "was under custody on other criminal sentences for [nearly] all" of the period during which the Commission had detained him. *Id.* Hagans, too, pleads no facts to support a plausible inference that the putative class members would not be in custody pursuant to other sentences but for their detentions by the Commission. To the contrary, many offenders whom the Commission detains pending a revocation hearing would be in custody pursuant to other sentences if the Commission were not detaining them. For example, an offender might be in custody for the same action that caused the Commission to detain him because such an action constitutes a new crime or violates

another term of supervision imposed by another court or body. Indeed, judges in this District often decline to detain an offender pending trial precisely because it expects that the Commission will detain him pending a revocation hearing (a that the Public Defender Service presumably knows). In such cases, the Court will release the offender, but with the direction that it be notified if the Commission does not detain him so that it can revisit its release decision and detain the offender.

For that reason, Hagans simply is incorrect to assert that "this putative class by definition encompasses only individuals who would not be in custody but for the pre-revocation detention they challenge: Each class member either has not been charged with criminal misconduct or has been ordered released pre-trial by the judge presiding over the underlying criminal charges." Pl.'s Resp. at 19. That is not true, and Hagans tellingly adduces no citation for this conclusory assertion. Contrary to Hagans' bald averment, many offenders whom the Commission detains would still be in custody pursuant to other sentences were the Commission not detaining them. As such, Hagans does not plausibly allege that any error by the Commission was "prejudicial" to the putative class members, as is necessary to obtain relief from custody. *See Sutherland*, 709 F.2d at 732.

Finally, in the alternative, if this Court does decide to grant the relief Hagans seeks, Federal Defendants respectfully request that the Court not order the putative class members' wholesale release outright, but instead issue only "a conditional writ with a stayed mandate" that would not result in putative class members' "immediate release from detention" so long as the Commission "conduct[s] the request individualized hearing for a class member." Pl.'s Resp. at 18.

*        *        *

**CONCLUSION**

This Court should dismiss this case.

Dated: September 1, 2025       Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:         */s/ Bradley G. Silverman*
        BRADLEY G. SILVERMAN, D.C. Bar #1531664
        Assistant United States Attorney
        601 D Street NW
        Washington, DC 20530
        (202) 252-2575
        bradley.silverman@usdoj.gov

*Attorneys for the United States of America*